ABC BOOKS, INC., Harry Heltsley, and C. L. Butler, individually, and as representatives of the class of persons dealing in literature as a business in Tennessee

v.

Thomas D. BENSON, Commissioner of Revenue of the State of Tennessee; Buford Ellington, Governor of Tennessee; David M. Pack, Attorney General of the State of Tennessee; Thomas H. Shriver, District Attorney General of Davidson County, Tennessee; and Noel R. Bagwell, District Attorney General of Montgomery County, Tennessee, individually, and as representatives of the class of District Attorneys General of the State of Tennessee; James E. Sewell, Jr., an officer of the police department of the City of Clarksville, Tennessee; and Billy W. Watkins, an investigator with the Office of the District Attorney General of Davidson County, Tennessee, individually, and as representatives of the class of police officers of the State of Tennessee.

Arthur SPIVAK

v.

Thomas H. SHRIVER, District Attorney General, and David M. Pack.

Civ. A. Nos. 5528, 5557.

United States District Court,
M. D. Tennessee,
Nashville Division.

July 15, 1970.

Herbert R. Rich, Philip M. Carden, Nashville, Tenn., Stanley Fleishman, Hollywood, Cal., for plaintiffs in Civ. A. No. 5528.

Thomas E. Fox, Paul E. Jennings, C. Hayes Cooney, Asst. Attys. Gen., State of Tennessee, Nashville, Tenn., for defendants Benson and others.

James C. Cunningham, Frank Runyon, Clarksville Tenn., for defendant Sewell.

Lewis D. Pride, Nashville, Tenn., Frierson M. Graves, Jr., Memphis, Tenn., for plaintiff Spivak.

Thomas E. Fox, Paul E. Jennings, C. Hayes Cooney, Asst. Attys. Gen., State of Tennessee, Nashville, Tenn., Albert D. Noe, Asst. Dist. Atty. Gen., Metropolitan Government, Nashville, Tenn., for defendants Shriver and Pack.

Before COMBS,* Circuit Judge, MILLER,** Circuit Judge, and GRAY, District Judge.

---

* Judge COMBS concurred in the opinion herein June 4, 1970, prior to his resignation from the Court of Appeals for the Sixth Circuit.

** At the time of the hearing of this action, Judge MILLER was United States District Judge for the Middle District of Tennessee. He took the oath of office as Circuit Judge July 13, 1970, and, at the time his concurring opinion herein was filed, was sitting as District Judge by designation.

1. 39–3003. "It shall be a misdemeanor for any person to knowingly sell, distribute, display, exhibit, possess with the intent to sell, distribute, display or exhibit; or to publish, produce, or otherwise create with the intent to sell, distribute, display or exhibit any obscene material. This paragraph shall not be construed to permit the seizure or suppression of any material, obscene or otherwise, such seizure or sup-

## OPINION

**FRANK GRAY, Jr., District Judge.**

In these actions plaintiffs seek, *inter alia*, declaratory judgments that certain Tennessee statutes are unconstitutional and injunctive relief prohibiting their further enforcement. A three-judge District Court was convened pursuant to 28 U.S.C. §§ 2281 and 2284, and, since the actions raise substantially similar questions, they were heard together.

Without detailing the factual situation as it pertains to each plaintiff, suffice it to say that one or more of the plaintiffs have standing to challenge T.C.A. §§ 39–3003, 39–3004, 39–3005, and 39–3007, all of which Code sections are portions of Tennessee's obscenity statutes.

Initially, plaintiffs assert that the State of Tennessee has "no power to enact any statute regulating what Tennessee citizens may write, print, distribute, sell, or read." This attack must fail because it is now basic in our law that obscenity is not protected under the First Amendment to the Constitution. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). It is a valid exercise of the State's police power to enact legislation regulating the dissemination of obscene matter.

Plaintiffs assert that T.C.A. § 39–3003 [1] is unconstitutional on its face on

pression to be lawful only as expressly provided for by law. Provided however, that if the district attorney-general is of the opinion that this section is being violated, he may file a petition in a circuit, chancery, or criminal court of his district relating his opinion, and request the court to issue a temporary injunction enjoining the person named in said petition from removing the obscene material from the jurisdiction of the court pending an adversary hearing on said petition. Where a temporary injunction is so issued, such adversary hearing shall be held within two (2) days after joinder of issues, at which hearing the court will determine whether or not the material in question is, in fact, obscene. On a finding of obscenity, the court shall continue its injunction in full force and effect for a period not to exceed forty-five (45) days or until an indictment on the matter has been submitted to the grand jury. If

various grounds which are discussed hereinafter. The first alleged facial infirmity is that it does not require a specific scienter, i. e., "particular knowledge of the contents of the particular book," but only requires general knowledge relating to the obscene nature of the material. It will be noted that the statute specifically includes the word "knowingly" and the phrase "with the intent" in making dealings in obscenity a misdemeanor.

Reliance is had on Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed. 2d 205 (1959), in which the Supreme Court held an obscenity ordinance of the City of Los Angeles unconstitutional on its face because it imposed "strict" or "absolute" criminal liability without any requirement of scienter. This reliance is misplaced. In that case, the Court did not define "what sort of mental element is requisite to a constitutionally permissible prosecution" and restricted its holding of invalidity to a criminal obscenity statute "which goes to the extent of eliminating *all* mental elements from the crime." [Emphasis added.] Moreover, at page 154, 80 S.Ct. at page 219, the Court said: "Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained * * * ."

■ We recognize that, as the Court said in Mishkin v. New York, 383 U.S. 502, 511, 86 S.Ct. 958, 965, 16 L.Ed.2d 56 (1966), "The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity." We hold that T.C.A. § 39–3003 amply serves these ends and fully meets the demands of the Constitution.[2]

Plaintiffs also urge that T.C.A. §§ 39–3003 and 39–3005,[3] the civil injunc-

forty-five (45) days elapse and the grand jury has taken no action, the injunction terminates. The injunction also terminates on the grand jury returning a not true bill. On the return of a true bill of indictment, the court shall order the obscene material delivered into the hands of the court clerk or district attorney-general, there to be held as evidence in the case.

"Every person who is convicted of violating this section shall be punished by imprisonment in the county jail or workhouse for not more than eleven (11) months and twenty-nine (29) days and a fine of not more than five thousand dollars ($5,000) in the discretion of the jury.

"The word 'person' as used in this section shall include the singular and the plural and shall also mean and include any person, firm, corporation, partnership, copartnership, association, or any other organization of any character whatsoever."

2. In Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La.1969), the Court held that the use of the word "intentional" and the phrase "with the intent" in a Louisiana obscenity statute satisfied the constitutional requirements for scienter set forth in Smith.

3. 39–3005. "The circuit, chancery, and criminal courts of this state have jurisdiction to enjoin the sale or distribution of obscene material as hereinafter specified:

"(a) The district attorney-general, in any district where a person, firm or corporation sells, distributes, exhibits or displays, or is about to sell, distribute, exhibit, or display, or has in its possession with the intent to sell, distribute, exhibit or display any material which is obscene, as hereinafter defined, may maintain an action for an injunction against such person, firm or corporation in the circuit, chancery or criminal court of the county in which said sale, distribution, exhibition, display or possession occurred, and to prevent such sales, distribution, exhibition or display or further sales, distribution, exhibition or display, or the further acquisition of any such material.

"(b) Any person, firm or corporation made a defendant in any suit for injunction filed under this section shall be entitled to a trial by the court without intervention of a jury. Where a temporary injunction has been issued, trial shall be held within two (2) days after joinder of issues and in such instances the court shall render its decision within two (2) days after the conclusion of the trial.

tion obscenity statute, are unconstitutional on their faces for failure to specifically provide for a prior adversary hearing on the question of obscenity before the dissemination of allegedly obscene materials is disturbed by criminal prosecution or by seizure or suppression, and, ergo, constitute a "prior restraint" and exert a "chilling" effect on the exercise of First Amendment freedoms. *See* Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

■ While the protection against prior restraint is an important right, it is not an absolute one. In Kingsley Books, Inc. v. Brown, 354 U.S. 436, 441, 77 S. Ct. 1325, 1328, 1 L.Ed.2d 1469 (1957), the Court, relying in part on Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), pointed out that protection even as to previous restraint is not unlimited. The Court said: "The phrase 'prior restraint' is not a self-wielding sword. Nor can it serve as a talismanic test."

In *Smith*, supra, 361 U.S. at 154, 80 S.Ct. at 219, the Court was more specific when it said: "Doubtless any form of criminal obscenity statute * * * will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene * * *." T.C.A. § 39–3003 specifically provides that it " * * * shall not be construed to permit the seizure or suppression of any material, obscene or otherwise, such seizure or suppression to be lawful only as expressly provided for by law." Neither it nor T.C.A. § 39–3005 prohibit an adversary hearing when constitutionally required prior to

either criminal prosecution or seizure or suppression.

■■ When a statute may be constitutionally applied or enforced, that statute must be upheld against a claim of constitutional infirmity on its face. Gable v. Jenkins, 309 F.Supp. 998, 1001 (N.D.Ga.1969); Rage Books, Inc. v. Leary, 301 F.Supp. 546, 548 (S.D.N.Y. 1969); and Stein v. Batchelor, 300 F. Supp. 602, 608 (N.D.Texas 1969). Whatever the constitutional requirements may be insofar as prior adversary hearings are concerned, they are implied in the statutes. Grove Press, Inc. v. Kansas, 304 F.Supp. 383, 390 (D.Kansas 1969).

Accordingly, we hold that the absence of a provision for an adversary hearing before criminal prosecution or seizure or suppression does not invalidate these statutes.

It is further asserted that these two statutes are fatally defective on their faces because they authorize the issuance of an *ex parte* temporary injunction without providing for notice and a prompt judicial determination of the obscenity *vel non* of constitutionally suspect materials, thus constituting "prior restraints" on the exercise of First Amendment rights. T.C.A. § 39–3003 provides that, where a temporary injunction is issued under its provisions, an adversary hearing shall be held within two days after joinder of issues, " * * * at which hearing the court will determine whether or not the material in question is, in fact, obscene." T. C.A. § 39–3005 makes mandatory, where a temporary injunction has been issued, a hearing within two days after joinder

"(c) In the event that a final decree permanently enjoins the defendant, such final decree shall direct the defendant to surrender to the sheriff of the county all of the obscene material, the sale, distribution, exhibition, display or possession of which is enjoined, and the decree shall direct the sheriff to seize and destroy such obscene material.

"(d) The review of any final decree shall be by broad appeal direct to the Supreme Court. Any party, including the

district attorney-general, shall be entitled to an appeal from an adverse decision of the court. The granting of an appeal shall have the effect of staying or suspending any order to destroy but not any order to seize such material, nor shall the granting of an appeal suspend any permanent injunction granted by the trial court.

"(e) The district attorney-general shall not be required to file any injunction, cost or appeal bond."

of issues and a decision by the court within two days after conclusion of the trial.

This court recognizes that neither of the statutes includes a provision for notice before the issuance of the temporary injunctions provided for therein. These provisions do constitute some prior restraint, although the restraint is not unlimited. The seriousness of such restraint was recognized by the Supreme Court in Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L. Ed.2d 584 (1963), when it said that "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." Prior to the decision in *Bantam Books, Inc.*, the Court had, in *Kingsley Books, Inc., supra,* sustained, against a like attack, a New York statute which authorized an *ex parte* temporary injunction and required a trial within one day after joinder of issue and a decision within two days after the conclusion of the trial.

Subsequent to the decision in *Bantam Books, Inc., supra,* the Court in Freedman v. Maryland, 380 U.S. 51, 58, 85 S. Ct. 734, 739, 13 L.Ed.2d 649 (1965) authorized some limited prior restraint, saying:

> "The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. * * * Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution."

It is contended here that, to the extent that *Freedman* authorizes a temporary injunction prior to an adversary hearing, it is modified by Carroll v. President and Commissioners of Princess Ann, 393 U.S. 175, 89 S.Ct. 347, 21 L. Ed.2d 325 (1968), in which it was held that a Maryland court could not constitutionally issue a temporary injunction restraining the holding of a political rally without a prior adversary hearing where it appeared that the persons who were the object of the injunction were available for notice and hearing. We consider it important that, in *Carroll,* the Court was dealing with the First Amendment right of free speech in the operation of the democratic process, a political rally, and in *Freedman* the Court was dealing with the First Amendment right of free speech with regard to obscenity. This distinction was noted in *Carroll,* 393 U.S. at page 182, 89 S.Ct. at page 352, when the Court said:

> "In the present case, the reasons for insisting upon an opportunity for hearing and notice, at least in the absence of a showing that reasonable efforts to notify the adverse parties were unsuccessful, are even more compelling than in cases involving allegedly obscene books. The present case involves a rally and 'political' speech in which the element of timeliness may be important. As Mr. Justice Harlan, dissenting in A Quantity of [Copies of] Books v. [State of] Kansas, [378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809] pointed out, speaking of 'political and social expression':

> " 'It is vital to the operation of democratic government that the citizens have facts and ideas on important issues before them. A delay of even a day or two may be of crucial importance in some instances. On the other hand, the subject of sex is of constant but rarely particularly topical interest.' "

We conclude that *Carroll* did not modify *Freedman* as asserted here.[4]

---

4. In Capri Art. Inc. v. Canale, Civil Action No. C–69–299, Western District of Tennessee, Chief Judge Brown held, on January 19, 1970, that Freedman authorizes the injunction provisions of T.C.A. § 39–3005 and had not been overruled by Carroll.

Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968), relied on by plaintiffs, is easily distinguished. The ordinance there found invalid, a movie censorship ordinance, provided for from fifty to fifty-seven days for the completion of the administrative process before initiation of the judicial proceeding. As the Court said therein, there was no provision which would assure a prompt judicial decision of the question of the alleged obscenity of the film.

■ It is our opinion that the Tennessee statutes, T.C.A. §§ 39–3003 and 39–3005, sufficiently limit the preservation of the status quo prior to an adversary hearing and final judicial determination of the question of obscenity, as required by *Freedman,* and, accordingly, we uphold these statutes against this attack. In so holding, we also necessarily hold that, since it is constitutionally permissible for the Tennessee statutes to authorize such a limited temporary injunction, there is no necessity for a provision for notice in the statutes.

It is also argued here that T.C.A. § 39–3003 is unconstitutional on its face because it may be interpreted to make mere private possession of obscene matter a crime in violation of the First and Fourteenth Amendments. This argument is based on Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), in which the Court held that the First and Fourteenth Amendments prohibit the making of mere private possession of obscene matter a crime.

■ Certainly, T.C.A. § 39–3003 does not so do, on its face. Moreover, the Tennessee Court of Criminal Appeals has held that this section is not to be interpreted so as to make the mere private possession of obscene matter a crime. Flannigan v. State of Tennessee, decided March 12, 1970.[5] Therefore, this statute has been interpreted by the Tennessee courts to conform to *Stanley* and,

accordingly, we sustain it against the constitutional attack based thereon.

Additionally, it is asserted that *Stanley* has rejected, or significantly modified, the proposition stated in Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498, that obscenity is not constitutionally protected. Plaintiffs contend that obscenity is now protected by the First Amendment, with the exceptions of intrusions upon the privacy of non-consenting adults and upon children and that, therefore, Tennessee's obscenity statutes are fatally defective for failure to be so specifically limited.

We do not so read *Stanley.* It dealt only with purely private possession in a private home, and the Court took great pains to so restrict its holding to that situation. In its concluding paragraph, the Court said: "*Roth* and the cases following that decision are not impaired by today's holding. As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home." *See also,* Palladino v. McBrine, 310 F. Supp. 308 (D.Mass.1970).

We, therefore, reject the argument that *Stanley* so modifies *Roth* as to make Tennessee's statutory provisions on obscenity facially invalid.

Additional objections to the constitutionality of these statutes, made by plaintiffs herein, include, with reference to T.C.A. § 39–3003, that it violates the Eighth Amendment's provision against cruel and unusual punishment, violates the Sixth and Fourteenth Amendments by providing district attorneys with means for depriving defendants in criminal cases of their right to trial by jury, violates the Fifth, Seventh and Fourteenth Amendments by depriving persons of property without due process of law, without compensation, and without a jury trial, and violates the Fourth,

5. According to the record, the Attorney General of Tennessee did not seek review of that decision in the Supreme Court of Tennessee.

Fifth and Fourteenth Amendments in their provisions pertaining to search, seizure, and self-incrimination, and with reference to T.C.A. § 39–3005, that it violates the Fifth and Fourteenth Amendments by permitting the seizure of private property without compensation, violates the Fourth and Fourteenth Amendments by permitting seizure of private property in an unreasonable manner, and violates the Seventh and Fourteenth Amendments by providing for the seizure of private property without compensation and without jury trial.

■ The court has considered these allegations and believes them to be so obviously without merit as not to require discussion. Accordingly, the court holds that T.C.A. §§ 39–3003[6] and 39–3005 are not facially unconstitutional.

The next statute attacked herein is T.C.A. § 39–3004,[7] it being asserted that it is a law impairing the obligations of contracts and, as such, is unconstitutional on its face as violative of Article I, Section 10 of the United States Constitution.

We believe this assertion is without merit. It is a valid exercise of Tennessee's police power to enact legislation making the dissemination of obscene matter unlawful. *Roth, supra,* and *Stanley, supra.*

In Manigault v. Springs, 199 U.S. 473, 26 S.Ct. 127, 50 L.Ed. 274 (1905), the Supreme Court said:

"It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers [police powers] as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected." (Bracketed language added.)

■ We hold that T.C.A. § 39–3004 is not constitutionally invalid on its face.

The last of Tennessee's obscenity statutes under attack here is T.C.A. § 39–3007[8] which defines obscenity. It is alleged that it is so vague as to be unconstitutional on its face.

This statute embodies the three "tests" set out in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), as derived from Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and intervening cases.

We agree with plaintiffs that the "tests" in *Memoirs* are not crystal clear

---

6. The plaintiff Heltsley, in Civil Action No. 5528, was indicted on a charge of violating T.C.A. § 39–3003 on March 4, 1969. This was before the effective date of an amendment to this section which added the provisions relative to issuance of injunctions, increased the penalty for violation, and added the last paragraph defining "person." For the reasons set forth herein we hold the pre-amendment section constitutional on its face.

7. 39–3004. "Any contract to be performed in whole or in part in this state which requires any person, firm or corporation to accept, receive, sell, distribute, or purchase any material which is obscene, as defined in § 39–3007, whether as a condition precedent to other contractual arrangements or otherwise, shall be no defense to any criminal, civil or injunction suit; and such a contract, to the extent that it may require any person, firm, or corporation to accept, receive, sell, dis-

tribute, or purchase any material which is obscene, is hereby declared to be against public policy and unenforceable."

8. 39–3007. "The following definition shall control in construing §§ 39–3003—39–3008:
"Obscene material: Any material, matter, object or thing, including but not limited to, any written or printed matter, film, picture, drawing, or any object or thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if in addition, (a) it is patently offensive to the public or if it goes substantially beyond customary limits of candor in describing or representing such matters, and (b) it is devoid of any literary, scientific or artistic value and is utterly without social importance. The phrase 'predominant appeal' shall be considered with reference to ordinary persons."

or easy of application, but, as plaintiffs seem to concede, the courts have followed the tripartite test first announced in *Roth*. *See* Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967); Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), affirmed 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970). We agree with the opinion of the three-judge court in *Milky Way Productions, Inc., supra*, that *Redrup* did not add additional "tests." In discussing the assertion that the New York statute under consideration was invalid on its face because it embodied only the three "tests" set out in *Memoirs* and the assertion that *Redrup* required two more "tests"—that there be "pandering" and "foisting upon an unwilling public"—the Court said, at 305 F.Supp. 294:

> "Plaintiffs misread the *per curiam* opinion in *Redrup*. As shown by the fuller opinions from which they derive, the supposedly additional, and allegedly essential, 'tests' are only *permissible* kinds of relevant *evidence* which may serve in a close case to tip the balance toward a finding of obscenity."

■ We find it unnecessary to add to the many discussions of the difficulties arising from the application of the "tests" embodied in *Memoirs*. We hold that the definition of obscenity in T.C.A. § 39–3007 meets the constitutional standards, and is not unconstitutional on its face.

■ Plaintiff C. L. Butler, in Civil Action No. 5528, seeks a declaratory judgment that T.C.A. §§ 67–4329 and 23–305, which pertain to Tennessee's privilege and sales taxes and the collection thereof, are facially unconstitutional. The record shows that the day before the complaint in this action was filed in this court the Chancery Court of Hamilton County vacated all of its prior orders entered under the purported authority of these statutes. Accordingly, there being no "actual controversy," as required by 28 U.S.C. § 2201, this court is without jurisdiction.

In the cases at bar, having ruled that the attacked statutes are facially constitutional, we reach the question whether other claims in these actions, pendent to the claims upon which this court's jurisdiction was invoked, should now be disposed of by this court.

■ If injunctive relief is sought on the basis of a claim that a state statute is constitutionally infirm, the matter must be heard by a three-judge court under the provisions of 28 U.S.C. § 2281. That statute does not require that other claims, joined to the claim requiring a three-judge court, also be heard and determined by such court. It is not necessary that a three-judge court hear and determine plaintiffs' application for injunctive relief based on their claims that the statutes have been unconstitutionally applied. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941).

All of the remaining items in these cases, i. e., the question of whether or not the plaintiffs in Civil Action No. 5528 may maintain it as a class action, the prayer for damages under various civil rights statutes, the question of the obscenity *vel non* of the materials involved, and various motions filed by the parties pertaining to these issues, likewise do not require determination by a three-judge court.

We have considered all of these matters in the light of the discussion of this question in Landry v. Daley, 288 F.Supp. 194 (N.D.Ill.1968), and have concluded that, as a matter of discretion, this court should decline to exercise its jurisdiction over the remaining matters and that they should be remanded to the single judge to whom they were originally assigned.

An order will be entered accordingly.

WILLIAM E. MILLER, Circuit Judge (concurring).

I concur fully in Judge GRAY's excellent and well-reasoned opinion in this case. I would only add that I am pre-

pared at this time as a member of the three-judge court, without the necessity of further proof, to hold and conclude that the film "The Bushwhacker," personally viewed by all the members of the court, is obscene within the meaning of the Tennessee statute and should be so declared.