Grady TAYLOR et al., Appellants,

v.

STATE of Tennessee on relation of Carl K. KIRKPATRICK, District Attorney General for Sullivan County, Tennessee, Appellee.

Grady TAYLOR and Eastern Amusement, Inc., a corporation, Appellants,

v.

STATE of Tennessee on relation of Carl K. KIRKPATRICK, District Attorney General for Sullivan County, Tennessee, Appellee.

Supreme Court of Tennessee.

Oct. 20, 1975.

Harry C. Bowyer, Kingsport, Frierson M. Graves, Jr., Heiskell, Donelson, Adams, Williams & Wall, Memphis, for appellants.

William C. Koch, Jr., Asst. Atty. Gen., Nashville, R. A. Ashley, Jr., Atty. Gen., for appellee.

## OPINION

BROCK, Justice.

The issues in the three captioned causes are identical and involve the construction and validity of Chapter 510, Public Acts of 1974, regulating obscenity. We are deciding all of them in this single opinion. In each case the trial court has found certain motion picture films being exhibited to the public by the appellants to be obscene according to the provisions of Chapter 510 of the Public Acts of 1974, codified as T.C.A. §§ 39–3010—39–3022. Under the provisions of that Act, the Court has permanently enjoined the defendants from further exhibition of the films and ordered that said films be remanded to the custody of the clerk of the Court and by him made available for use as evidence in any criminal case which might be brought arising out of the exhibition of said films, or, in the event no such criminal prosecution ensued, that the films be destroyed, all as provided by the terms of said Chapter 510 of the Public Acts of 1974.

### I

The primary insistence of the appellants is that the Act in question is unconstitutional for various reasons. The first insistence made is that the Act, in general, and Section 3(A) thereof, in particular, in defining unlawful conduct does not contain a requirement of "scienter" and for this reason is unconstitutional. Defendants rely upon *Ellenburg v. State*, 215 Tenn. 153, 384 S.W.2d 29 (1964) and *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). The pertinent language of the statute is as follows:

"Section 2.

\*　　\*　　\*　　\*　　\*　　\*

"(F) 'Knowingly' as used above means having actual or constructive knowledge of the subject matter. A person shall be deemed to have constructive knowledge of the contents if he has knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the material.

\*　　\*　　\*　　\*　　\*　　\*

"Section 3. (A) It shall be unlawful to knowingly send or cause to be sent, or bring or cause to be brought, into this state for sale, distribution, exhibition, or display, or in this state to prepare for distribution, publish, print, exhibit, distribute, or offer to distribute, or to possess with intent to distribute or to exhibit or offer to distribute, any obscene matter. It shall be unlawful to direct, present, or produce any obscene theatrical production or live performance and every person

who participates in that part of such production which renders said production or performance obscene is guilty of said offense."

We conclude that the quoted language clearly requires scienter in the only sense in which it is demanded by the First Amendment. To render constitutional a statute which prohibits the exhibition or distribution of obscene material, it is not necessary to require that a defendant know or believe that the material in question is legally obscene; it is sufficient to require that the defendant have knowledge of the contents or character of the obscene material. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Rosen v. United States*, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606 (1896); *Mishkin v. New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). In *Hamling* the Supreme Court said:

> "We think the 'knowingly' language of 18 U.S.C. § 1461, and the instructions given by the District Court in this case satisfied the constitutional requirements of scienter. *It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributes, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law.* Such a formulation of the scienter requirement is required neither by the language of 18 U.S.C. § 1461 or by the Constitution." (Emphasis added.) Id. 94 S.Ct. at 2910–2911.

In the *Rosen* case the Supreme Court, in rejecting a claim that it was constitutionally necessary to show that the defendant knew or believed that the material in question was obscene, stated:

> "The statute is not to be so interpreted. The inquiry under the statute is whether the paper charged to have been obscene, lewd, and lascivious was in fact of that character; and if it was of that character and was deposited in the mail by one who knew or had notice at the time of its contents, the offense is complete, although the defendant himself did not regard the paper as one that the statute forbade to be carried in the mails. Congress did not intend that the question as to the character of the paper should depend upon the opinion or belief of the person who, with knowledge or notice of its contents, assumed the responsibility of putting it in the mails of the United States." Id. 16 S.Ct. at 438.

In the *Mishkin* case the Supreme Court, after noting that the New York statute in question had been construed to require an awareness on the part of the defendant of the character of the obscene material distributed, said:

> "The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity. The New York definition of the scienter required by [the New York statute] amply serves those ends, and therefore fully meets the demands of the Constitution." Id. 86 S.Ct. at 965.

Obviously, the statute before us complies with the scienter requirement of the First Amendment as construed in the foregoing cases. Section 3(A) requires that the prohibited act of exhibition, distribution, etc., be knowingly done; and, "knowingly" is defined in Section 2(F) as meaning actual knowledge of the subject matter or actual knowledge of facts which would put a reasonable and prudent man on notice of the suspect nature of the material in question. *Ellenburg v. State, supra,* and *Smith v. California, supra,* are simply not in point for the reason that in those cases the courts were dealing with statutes which required no knowledge by the defendant of the contents of the alleged obscene material which

he distributed or exhibited. The defendants would have us give to Section 3(A) a strained construction by holding that the word "knowingly" applies only to importation into this state of obscene material and does not apply to the remainder of said section dealing with acts within the state of Tennessee. We refuse to do violence to the legislative intent by giving the statute such a construction. It must be remembered that the Legislature, when considering this statute, had the benefit of the wisdom that in *Ellenburg v. State, supra,* this Court had held the predecessor to this statute unconstitutional because it did not require scienter. As we construe this Act, the element of scienter is required for every offense defined by the Act. We, therefore, conclude that the contention of the appellants that Chapter 510 of the Public Acts of 1974 violates the First Amendment to the Constitution of the United States in that it allegedly fails to require scienter is without merit. Cf. *ABC Books, Inc. v. Benson,* 315 F.Supp. 695 (Tenn.1970).

## II

■ Next, the defendants assert that the definitions contained in Section 2(H) of the Act are so vague and indefinite that they violate Article I, § 19 of the Constitution of Tennessee and the First and Fourteenth Amendments of the United States Constitution. Section 2(H) provides:

" 'Sexual conduct' as used above shall be construed to mean:

"(1) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated. A sexual act is simulated when it depicts explicit sexual activity which gives the appearance of ultimate sexual acts, anal, oral or genital. The term 'ultimate sexual acts' shall be construed to mean sexual intercourse, anal or otherwise, fellatio, cunnilingus or sodomy, or (2) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

Section 2(I) defines "patently offensive" as meaning "that which goes substantially beyond customary limits of candor in describing or representing such matters." These definitions in Section 2(H) and 2(I) constitute further refinements of the definition of "obscene" found in Section 2(A) of the Act which provides:

" 'Obscene' means (1) that the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; (2) that the work depicts or describes, in a patently offensive way, sexual conduct, and (3) that the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

In our view, the contention that the foregoing definitions are unconstitutionally vague cannot be seriously maintained.

" 'The Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . ..' *United States v. Petrillo,* 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877. . . . 'That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense . . ..' " *Roth v. U. S.,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), quoted with approval in *Hamling v. U. S., supra.*

The words used give adequate warning of the conduct proscribed and set out boundaries sufficiently distinct for courts to fairly administer the law; no more is required. This statute represents a good faith effort by our General Assembly to comply with the standards recently announced by the Supreme Court of the United States in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and most of the

language attacked as vague is taken *verbatim* from that opinion. We hold that the definitions here attacked comply with the applicable standards of substantive due process.

### III

Section 9 of the Act empowers the Circuit, Chancery and Criminal Courts, upon sworn complaint filed by a district attorney general, to issue all proper restraining orders, injunctions and other writs and processes appropriate for enforcement of the Act, and, provides that:

"In order to facilitate the introduction of evidence at any hearing as provided herein, the court is hereby empowered to order defendants named in any proceeding set out herein to produce one (1) copy of the matter alleged to be obscene, along with necessary viewing equipment, in open court at the time of the hearing or at any other time agreed upon by the parties and the court. . . .

(B) In the event that a final order or judgment of injunction be entered against the person sought to be enjoined, such final order or judgment shall contain a provision directing the person to surrender to the clerk of the court of the county in which the proceedings were brought any of the obscene matter in his possession and such clerk shall be directed to hold said matter in his possession to be used as evidence in any criminal proceedings in which said matter is in issue but if no indictment is returned concerning said matter within six (6) months of the entry of said final order, the said clerk shall destroy said matter."

The defendants have been required, as provided in the quoted provisions of Section 9, to produce, for use as evidence at the hearings in the trial court, certain motion picture films which were being exhibited to the public and which were alleged to be obscene. Each defendant contends that this procedure violates the privilege "not to be compelled in any criminal case to be a witness against himself," as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Constitution of Tennessee. We have concluded, for the reasons presently to be stated, that this contention is without merit.

The claim of the corporate defendant must fail because a corporation has no privilege from self-incrimination; only persons are protected. *Wilson v. U. S.,* 221 U.S. 361, 382, 31 S.Ct. 538, 544, 55 L.Ed. 771 (1911); *People v. Modern Amusement Co., Inc.,* 72 Misc.2d 950, 340 N.Y.S.2d 748 (1973).

Individuals are protected only from (1) extortion by the state of incriminating personal testimony, *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) and (2) the forced production of personal and private papers and effects. *Boyd v. U. S.,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Testimony is not involved here for the Act does not provide for compulsory testimony by defendants and these defendants were not required to utter one word. Thus, the issue is whether motion picture films being used for public exhibition are to be treated as "private papers and effects" within the protection of the *Boyd* rule. Papers and effects with respect to which "there exists no legitimate expectation of privacy" are not protected by the privilege. *Couch v. U. S.,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Obviously, no such "expectation of privacy" exists with respect to a motion picture film which is used for exhibition in a public theatre. *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). Accordingly, it has been held that no violation of the privilege occurs when one in possession of such a film is compelled to produce it in court for use as evidence. *People v. Modern Amusement Co., Inc., supra* ; *Houston v. Manerbino,* 521 P.2d 166 (Colo.1974); *1024 Peachtree Corp. v. Slaton,* 228 Ga. 102, 184 S.E.2d 144 (1971). We, therefore, hold that the individual defend-

ants were not privileged to refuse production of the films in question since they were not private but were held and used for exhibition to the public. Moreover, the individual defendants are not entitled to claim the privilege with respect to these films for another reason, viz., there is no showing that said films belong to them. An officer or employee of a corporation is not privileged to refuse production of documents belonging to the corporation even though they prove his guilt. *U. S. v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). In the *White* case, *supra*, the Court said:

"Moreover, the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity." Id. at 699, 64 S.Ct. at 1251.

Appellants rely upon *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1974). But, that case dealt with a different issue from that presented in this case. The Court there said:

"The narrow issue in this case is whether a lawyer may be held in contempt for advising his client, during the trial of a civil case, to refuse to produce material demanded by a subpoena *duces tecum* when the lawyer believes in good faith the material may tend to incriminate his client." Id. 95 S.Ct. at 591.

In a footnote to that opinion the Court further observed:

"In view of our disposition of this case upon other grounds we need not, and do not, decide whether the Fifth Amendment privilege actually encompasses these magazines." Id. 95 S.Ct. at 596.

We, therefore, conclude that *Maness* furnishes no support to appellants.

## IV

■■■ Next, the defendants contend that the Act is invalid because it blends together civil and criminal sanctions. It is said that the statute "violates the principles of equity," by authorizing the issuance of injunctions "in a criminal matter." The short answer to this complaint is that the Legislature may vest such jurisdiction in the Chancery Court as it chooses. The Legislature may provide any legitimate means to regulate obscenity including the employment of varied judicial remedies.

"It is not for this Court thus to limit the State in resorting to various weapons in the armory of the law. Whether proscribed conduct is to be visited by a criminal prosecution or by a *qui tam* action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice." *Kingsley Books v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1328, 1 L.Ed.2d 1469 (1957).

We note that the Supreme Court of the United States has expressed approval of a procedure similar to that provided by the Act here under consideration. *Paris Adult Theatre I v. Slaton, supra.*

■■■ It is also asserted that Section 9(B) of the Act authorizes an impermissible restraint of the exhibition of films for a period of six (6) months. This argument is wholly unfounded since the six (6) months restraint cannot be applied unless and until "a final order or judgment of injunction" is entered after a full adversary hearing and an adjudication of obscenity *vel non.* This procedure fully complies with constitutional standards. *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). Once a film is judicially determined to be obscene it becomes contraband and may properly be destroyed without violating the rights of anyone.

## V

■■■ Appellants next assert that the search warrant provisions of Section 6(A) of the Act are unconstitutional. We need not, and do not, determine this claim for the reason that appellants have no standing to

raise it, no search warrant having been issued in this case.

## VI

Lastly, appellants contend that the films here involved are not obscene. Having viewed these films, we have no hesitation in concluding that said films are grossly obscene. Indeed, they are "hard core pornography." The films are in the record and we do not deem it necessary to describe them in detail in this opinion. They clearly come within the definitions of obscene materials set out in Section 2 of the Act. We hold (1) that the average person, applying contemporary community standards, would find that each of these films, taken as a whole, appeals to the prurient interest; (2) that each film depicts or describes, in a patently offensive way, sexual conduct; and (3) that each film, taken as a whole, lacks serious literary, artistic, political or scientific value. It is clear, therefore, that these films are not protected by the First Amendment. *Miller v. California, supra.* That great guarantee of free expression affords no protection to obscenity. *Roth v. U. S.*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Miller v. California, supra.* In *Roth* the Court said:

> "But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance. . . . We hold that obscenity is not within the area of constitutionally protected speech or press." 354 U.S. at 484–485, 77 S.Ct. at 1309.

And, the Court, in *Miller* said:

> "This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment." 413 U.S. at 23, 93 S.Ct. at 2614.

We hold that the Act under consideration, in its definitions of obscenity, comports with the requirements of the First Amendment, *Miller v. California, supra,* and that the films in question clearly come within the terms of those definitions and are, therefore, obscene.

We affirm the judgment of the trial court in each case. Costs are adjudged against the appellants and sureties.

FONES, C. J., and COOPER, HENRY and HARBISON, JJ., concur.