Argued and submitted January 20, 1984, resubmitted In Banc December 4, 1985, reversed April 9, reconsideration denied July 11, petition for review allowed September 3, 1986 (301 Or 666)

**STATE OF OREGON,**
*Respondent,*

*v.*

**EARL A. HENRY,**
*Appellant.*

**(31300, 31301; CA A26439)**

717 P2d 189

Timothy J. Sercombe, ACLU Foundation of Oregon, Eugene, argued the cause for appellant. With him on the brief were Harrang, Swanson, Long & Watkinson, Eugene.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

YOUNG, J.

Joseph, C. J., concurring.

Van Hoomissen, J., concurring in part and dissenting in part.

## YOUNG, J.

Defendant appeals his conviction for dissemination of obscene material.[1] ORS 167.087(1). He was indicted, *inter alia,* for dissemination of magazines entitled "Bronco Buster" and "3-Way Cum." He demurred to the indictment on the ground that the facts stated do not constitute an offense, because ORS 167.087 is unconstitutional. He stipulated that he had sold the magazines in question. The sole issue for the jury was whether the magazines were obscene within the definition of ORS 167.087(2). He was found guilty only in connection with the magazine "3-Way Cum." On appeal he argues that the court erred in overruling the demurrer.[2]

■ Defendant argues that ORS 167.087 is unconstitutionally "vague" and "overbroad" and violates his right to freedom of expression under Article I, section 8, of the Oregon Constitution. "Vagueness" is a catchword for a number of possible constitutional violations. For example, in *State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969), the court explained:

> "A vague statute lends itself to an unconstitutional delegation of legislative power to the judge and jury, and, by permitting the jury to decide what the law will be, it offends the principle, if not the rule, against *ex post facto* laws."[3]

A vague statute also violates Article I, section 20, of the Oregon Constitution, in that it invites "standardless and unequal application of penal laws."[4] *State v. Graves,* 299 Or

---

[1] Under a separate indictment (case no. 31301), defendant was also convicted of "possession of obscene material with intent to disseminate" involving a magazine entitled "Crystal Dawn." Defendant's demurrer on constitutional grounds was denied. The state concedes that that conviction must be reversed, because the magazine was seized pursuant to an invalid search warrant. However, we reverse the conviction in that case for the reasons stated in this opinion.

[2] Defendant also argues that the jury verdict is fatally inconsistent, that the court erred in precluding comparison evidence, that this court has an independent obligation to review the magazine in question and that it is not obscene as a matter of law. Because we determine that ORS 167.087 violates the state constitution, we do not reach these issues.

[3] Oregon Constitution, Article I, section 21, provides in part:

"No *ex post facto* law * * * shall ever be passed."

[4] Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Application of a vague statute may violate the defendant's right to fair notice

189, 197, 700 P2d 244 (1985); *State v. Robertson,* 293 Or 402, 408, 649 P2d 569 (1982). Defendant's argument here is that the definition of obscenity, ORS 167.087(2), is so subjective that it fails to give potential defendants notice of its scope and allows the fact finder to decide, after the fact and according to its own sensibilities, whether particular material is obscene.

■   A claim of "overbreadth" asserts that the terms of the statute exceed constitutional boundaries by purporting to reach conduct protected by constitutional guarantees. *State v. Robertson, supra,* 293 Or at 410. "Overbreadth" in this context refers to a violation of Article I, section 8, which provides in part:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever * * *."

A statute will be struck down as unconstitutionally overbroad if its terms could *hypothetically* prohibit protected speech even if, in the instance before the court, the defendant's conduct could be constitutionally prohibited by a more narrowly drawn statute. *See State v. Robertson, supra; State v. Woodcock,* 75 Or App 659, 706 P2d 1012 (1985), *rev den* 300 Or 506 (1986).

■   Finally, defendant contends that ORS 167.087 is unconstitutional, because Article I, section 8, *flatly* bans the enactment of legislation directed to the substance of communication. This contention is distinct from an overbreadth challenge, because overbreadth analysis assumes that, although in the particular instance some regulation of the subject might be constitutional, the means reach too far. Defendant's argument here is that the *subject* of obscenity is wholly withdrawn from legislative purview.[5]

---

guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The due process requirement of fair notice to potential defendants of a criminal statute's scope and reach is embodied in the commitment of the criminal code set forth in ORS 161.025(1)(c) to "give fair warning of the nature of the conduct declared to constitute an offense." *State v. Robertson, supra,* 293 Or at 409.

[5] Defendant cites *State v. Robertson, supra,* for the proposition that Article I, section 8, forbids the legislature from enacting an obscenity proscription, because it is necessarily directed to the content of speech rather than an unlawful effect. The state cites *Robertson* for the proposition that "obscenity" is a historical exception to Article I, section 8. It is unnecessary, in this instance, to determine whether Article I, section 8, flatly bans the enactment of any obscenity proscription, because we determine that

■ Vagueness and overbreadth are distinct constitutional challenges. However, the constitutional principles of freedom of expression and certainty of penal laws interact in that a statutory prohibition of "communication" is particularly vulnerable to constitutional attack for vagueness. *State v. Blair*, 287 Or 519, 523, 601 P2d 766 (1979). We conclude that the statutory definition of obscenity, ORS 167.087(2), is unconstitutionally vague under Article I, sections 20 and 21, of the Oregon Constitution.[6]

ORS 167.087 provides in part:

"(1) A person commits the crime of disseminating obscene material if he knowingly makes, exhibits, sells, delivers or provides, or offers or agrees to make, exhibit, sell, deliver or provide, or has in his possession with intent to exhibit, sell, deliver or provide any obscene writing, picture, motion picture, films, slides, drawings or other visual reproduction.

"(2) As used in subsection (1) of this section, matter is obscene if:

"(a) It depicts or describes in a patently offensive manner sadomasochistic abuse or sexual conduct;

"(b) The average person applying contemporary state standards would find the work, taken as a whole, appeals to the prurient interest in sex; and

"(c) Taken as a whole, it lacks serious literary, artistic, political or scientific value."

The definition of "obscenity" in subsection (2) was

---

ORS 167.087(2), as written, violates Article I, sections 20 and 21. *See In re Lasswell*, 296 Or 121, 673 P2d 855 (1983); *see also State v. Moyle*, 299 Or 691, 705 P2d 740 (1985).

[6] Defendant demurred to the indictment before trial on the ground that ORS 167.087 is "vague" and "overbroad." He again demurred to the indictment after verdict, arguing that ORS 167.087 violates Article I, section 8. The focus of defendant's argument on appeal is that ORS 167.087 violates Article I, section 8, under the analysis developed by the Supreme Court in *State v. Robertson, supra*. Defendant also argues on appeal that the definition of obscenity in ORS 167.087(2) "has led to a great deal of uncertainty," because "the standards are largely indefinite, providing inadequate warning to potential violaters. Vague laws allow arbitrary enforcement. There is a high risk of subjectivity in jury determinations on offensiveness, contemporary community standards and social value[.] * * * [T]he obscenity standards create a community of twelve seated in the box and permit their standards to largely determine *ex post facto* whether material is obscene." Despite the comments of the dissent to the contrary, we conclude that the vagueness issue has been adequately raised below and on appeal.

first enunciated in *Miller v. California,* 413 US 15, 24, 93 S Ct 2607, 37 L Ed 2d 419 (1973),[7] and was later applied to consensual adult pornography in *Paris Adult Theatre I v. Slaton,* 413 US 49, 93 S Ct 2628, 37 L Ed 2d 446 (1973). The court in *Miller,* determined that the "specific prerequisites [of the *Miller* test] will provide fair notice to a dealer in such material that his public and commercial activities may bring prosecution." Justice Brennan, dissenting in *Paris Adult Theatre I,* explained:

> "[A]fter 16 years of experimentation and debate I am reluctantly forced to the conclusion that none of the available formulas, including the one announced today, can reduce the vagueness to a tolerable level while at the same time striking an acceptable balance between the protections of the First and Fourteenth Amendments, on the one hand, and on the other the asserted state interest in regulating the dissemination of certain sexually oriented materials. Any effort to draw a constitutionally acceptable boundary on state power must resort to such indefinite concepts as 'prurient interest,' 'patent offensiveness,' 'serious literary value' and the like. The meaning of these concepts necessarily varies with the experience, outlook, and even idiosyncrasies of the person defining them. Although we have assumed that obscenity does exist and that we 'know it when [we] see it,' we are manifestly unable to describe it in advance except by reference to concepts so elusive that they fail to distinguish between protected and unprotected speech." 413 US at 84. (Citations omitted.)

Despite Justice Brennan's views, the *Miller* formula embodied in ORS 167.087 meets the requirement of the First and Fourteenth amendments to the United States Constitution. Our obligation, however, is to consider the statute first under the Oregon Constitution. *State v. Robertson, supra.* In discussing defendant's challenge to ORS 167.087 under the state constitution, we find it useful to review the Oregon obscenity cases.

---

[7] *Miller v. California, supra,* requires that the average person applying "contemporary community standards" find that the work appeals to prurient interest. In *Hamling v. United States,* 418 US 87, 94 S Ct 2887, 41 L Ed 2d 590 (1974), the Supreme Court held that "community standards" need not be national standards to pass constitutional muster. "Contemporary community standards" in ORS 167.087(2)(b) refers to a statewide community. *See State v. Liles, supra,* 22 Or App at 139.

In *State v. Jackson,* 224 Or 337, 356 P2d 495 (1960), the court reversed the trial court's ruling that *former* ORS 167.150(1)[8] was unconstitutionally vague under the state constitution.[9] The majority first recognized "[t]he impossibility of finding any popularly accepted definition for the word 'obscene' * * *." 224 Or at 355. The court then adopted the Model Penal Code definition of obscenity for application on remand:

> "A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters." 224 Or at 360.

The court noted that the Model Penal Code definition also satisfied the standard adopted by the United States Supreme Court in *Roth v. United States,* 354 US 476, 487 n 20, 77 S Ct 1304, 1 L Ed 2d 1498 (1957). 224 Or at 361. Judge O'Connell, dissenting (joined by Judges Warner and Sloan), agreed that *former* ORS 167.150, as interpreted by the majority, satisfied the First and Fourteenth Amendments to the United States Constitution. 224 Or at 365, citing *Roth v. United States, supra.* However, unlike the majority, the dissenters concluded that the United States Supreme Court opinion in *Roth* was not a useful guide in determining the constitutionality of the statute under the state constitution, because the *Roth* opinion

---

[8] *Former* ORS 167.150(1) (*repealed by* Or Laws 1961, ch 579, § 2) imposed misdemeanor punishment on any person who:

> "(1) Imports, designs, copies, draws, photographs, prepares, publishes, sells, lends, gives away, distributes, shows or exhibits or has in his possession with intent to publish, sell, lend, give away, distribute, show or exhibit any article or instrument of indecent or immoral use, or any obscene or indecent book, paper, writing, printed matter, picture, drawing, photograph or engraving."

[9] The trial court concluded that *former* ORS 167.150 was invalid for three reasons:

> "(1) It imposes prior restraints upon publications contrary to the Oregon Constitution, Article I, section 8;

> "(2) It prohibits publication of crime news and deeds of lust and bloodshed thereby invading freedom of speech;

> "(3) The word 'obscene' as used by the act, is unconstitutionally vague, measured by the requirements of the Oregon Constitution." *State v. Jackson, supra,* 224 Or at 342.

For a history of Oregon obscenity legislation before the enactment of ORS 167.087, *see* Meyer and Seifer, "Censorship in Oregon: New Developments in an Old Enterprise," 51 Or L Rev 537 (1972).

"evades the very problem which must be met in dealing with the constitutionality of this type of legislation." 224 Or at 366. The dissent stated:

> "The court held, 'obscenity is not within the area of constitutionally protected speech or press.' If, as Justice Harlan points out in his concurring and dissenting opinion, we could isolate '"obscenity" as a particular *genus* of "speech and press" which is as distinct, recognizable and classifiable as poison ivy is among other plants,' there would be no difficulty in separating obscene material from constitutionally protected expressions and in sustaining a statute which suppresses 'obscenity.' " 224 Or at 366. (Citations omitted.)

The dissent argued:

> "[G]ranting that the legislature is entitled to restrict freedom of expression when it decides that competing social values predominate, the restraint is valid only if there is some ascertainable criteria [sic] by which the courts can, in specific cases, determine whether the statute is applicable." 224 Or at 377.

The dissent would have held that the breadth and vagueness of the Model Penal Code definition of obscenity did not meet the higher standard of definiteness required of a criminal law which extends to expression.

*State v. Childs,* 252 Or 91, 447 P2d 304 (1968), *cert den* 394 US 931 (1969), involved a constitutional challenge to *former* ORS 167.151. The statute, enacted after *State v. Jackson, supra,* also included the Model Penal Code/*Roth* definition of obscenity. The court admitted that "the concept of obscenity does not lend itself to precise mathematical definition" but "reject[ed] the contention that obscenity is not capable of a sufficiently precise definition." *State v. Childs, supra,* 252 Or at 100. The court, rejecting defendant's vagueness claim, relied on *Roth v. United States, supra,* and did not independently consider a vagueness challenge under the state constitution.

In *State v. Liles,* 22 Or App 132, 537 P2d 1182, *rev den* (1975), *cert den* 425 US 963 (1976), the defendant challenged ORS 167.087 on the grounds of vagueness and overbreadth under the First and Fourteenth Amendments. ORS 167.087

was enacted to conform to the First and Fourteenth Amendment standards set forth in *Miller v. California, supra.* Therefore, the question under the federal constitution was whether the state legislature had succeeded in enacting the *Miller* formula. We determined that the statute was not unconstitutionally vague, because it "follows the guidelines of *Miller v. California* * * * as to what may be defined and regulated as 'obscenity.' " 22 Or App at 140.

The issue of vagueness under the federal constitution was again raised in *Film Follies, Inc. v. Haas,* 22 Or App 365, 539 P2d 669, *rev den* (1975), *appeal dismissed* 426 US 913 (1976). The argument was summarily rejected on the basis of *State v. Liles, supra.* The last time we addressed the constitutionality of ORS 167.087 was in *State v. Tidyman,* 30 Or App 537, 568 P2d 666, *rev den* (1977). In that case, Judge Tanzer wrote:

"Finally, defendant contends that Oregon's obscenity statute, ORS 167.087, is unconstitutionally vague and overbroad. This writer, not joined by his colleagues, would concur if controlling law were not settled otherwise. We therefore adhere to our prior decision to the contrary. *Film Follies, Inc. v. Haas* * * *." 30 Or App at 554.

The Oregon Supreme Court has consistently held that a particular type of expression labeled "obscenity" may be prohibited under Article I, section 8. However, as evidenced by the dissent in *State v. Jackson, supra,* the members of the court have not always agreed that a particular legislative or judicial definition was capable of separating "obscene" expression from protected expression. The court has not considered the current definition of obscenity based on *Miller v. California, supra,* and codified in ORS 167.087(2). *See State v. Liles, supra; Film Follies, Inc. v. Haas, supra;* and *State v. Tidyman, supra.* We turn to defendant's vagueness challenge under the Oregon Constitution and discuss federal cases only to aid in that analysis.

In *Miller v. California, supra,* the United States Supreme Court premises its opinion on its oft-repeated view that "obscenity" is not "speech," *Roth v. United States, supra,* 354 US at 485, and, therefore, is not entitled to protection under the First and Fourteenth Amendments to the United States Constitution. The Oregon legislature, in adopting the

*Miller* definition in ORS 167.087(2), apparently made the same assumption with respect to Article I, section 8, of the Oregon constitution. The parties offer competing contentions in their briefs as to that assumption, raising the question whether the right to "speak, write, or print freely on any subject whatever" includes the right to disseminate obscenity.

The question is one we are not required to answer in this case because, even assuming that some abstraction called "obscenity" is not protected speech under Article I, section 8, the statute we consider here does not satisfactorily draw a line between such material and other forms of communication.[10] ORS 167.087(1) proscribes "disseminating obscene material." The words "disseminating" and "material" are particularly described in terms of specific acts and objects. The word "obscene" is defined by ORS 167.087(2). To be obscene, material must depict or describe "sadomasochistic abuse or sexual conduct." ORS 167.087(2)(a). The claim in this case is that the magazine in question depicts "sexual conduct." ORS 167.060(10) provides:

> " 'Sexual conduct' means human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification."

In *State v. House,* 66 Or App 953, 957, 676 P2d 892 (1984), *aff'd* 299 Or 78, 698 P2d 951 (1985), we construed the language "in an act of apparent sexual stimulation or gratification" to mean "any touching of the described areas that a reasonable person would perceive as sexually stimulating or gratifying." So interpreted, we determined that the definition of "sexual

---

[10] As the dissent points out at length, other state courts have accepted the *Miller* standards, often without engaging in a careful analysis of them. Some of those cases have more or less persuasive dissents, as does *Miller* itself. *See, e.g., Bloom v. Municipal Court,* 16 Cal 3d 71, 86, 127 Cal Rptr 317, 545 P2d 229 (1976) (Tobriner, J., dissenting); *City of Portland v. Jacobsky,* 496 A2d 646, 650 (Me 1985) (Scolnik, J., concurring and dissenting). This is one of those cases in which we find the arguments of dissenters and of commentators more helpful in determining the meaning of the Oregon constitution than are majority opinions from other jurisdictions. *See State v. Soriano,* 68 Or App 642, 645, 684 P2d 1220, *opinion adopted,* 298 Or 392, 693 P2d 26 (1984).

conduct" is sufficiently clear to withstand a vagueness challenge.[11]

The difficulty, however, is not in separating depictions of sexual conduct from depictions of nonsexual conduct. The difficulty is in separating "obscene" depictions of sexual conduct from depictions that are not "obscene."[12] Because a depiction or description of sexual conduct is expression, any proscription must be drawn with particular care and precision to satisfy Article I, section 8. *State v. Blair, supra.* The only tool which a judge and jury have to distinguish the obscene sexual expression from protected sexual expression is the three-part *Miller* test embodied in ORS 167.087(2).

First, the material must be "patently offensive." ORS 167.087(2)(a). "Patent" means "evident" or "obvious." *Webster's Third New International Dictionary,* 1654 (1976). "Offensive" "describes what is disagreeable or nauseating or painful because of outrage to taste and sensibilities * * *." *Webster's Third New International Dictionary,* 1566 (1976). As a threshold matter, under those definitions, the jury must find the depiction of sexual conduct to be obviously outrageous to the average person's sensibilities.

Second, the jury must determine that "[t]he average person applying contemporary state standards would find the work, taken as a whole, appeals to the prurient interest in sex." ORS 167.087(2)(b). Prurient means a "shameful or morbid" interest in sex. *State v. Jackson, supra,* 224 Or at 363. Jurors are required to apply contemporary state standards of the average person and to avoid determining prurience based on their own personal opinions of the propriety of sexual expression. A "juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage [or state] from which he comes," *Hamling v. United*

---

[11] In *State v. House, supra,* we found that ORS 167.062, which proscribed "sexual conduct in a live public show," to be overbroad, because the proscription included such works as "Romeo and Juliet" and "Cat on a Hot Tin Roof." We do not have the same constitutional invalidity here, because ORS 167.087(2)(c) excludes works with "literary" or "artistic" value.

[12] As one commentator put it: "It may be possible to distinguish between degrees of explicitness in discussions of sex, but among explicit discussions of sex it is heroic to attempt to distinguish the good from the bad." Kalven, "The Metaphysics of the Law of Obscenity," 1960 S Ct Rev 1, 3.

*States,* 418 US 87, 104, 94 S Ct 2887, 41 L Ed 2d 590 (1974), and may base the determination of prurience on the juror's own "common sense and innate sensibilities." *State v. Tidyman, supra,* 30 Or App at 551. If the jury determines that the material depicts sexual conduct in a manner that is patently offensive and that it appeals to a prurient interest in sex, then under ORS 167.087(2)(c) the jury must determine whether the material has "serious literary, artistic, political or scientific value."

Whether a particular work is obscene within the three-part definition of ORS 167.087 is a question of fact. *Miller v. California, supra; State v. Tidyman, supra.* In making the factual determination, the jury is, in essence, making a constitutional distinction between protected and unprotected sexual expression. *See* Kalven, "The Metaphysics of the Law of Obscenity," 1960 S Ct Rev 1, 20-21. When the material depicts "sexual conduct," the critical distinction between protected and criminal expression must be made on the basis of offensiveness, appeal to prurient interest and lack of serious literary, artistic, political and scientific value. Each of those determinations is necessarily subjective. *See* Kassner, "Obscenity Leads to Perversion," 20 NYLF 551 (1975); Hardy, *"Miller v. California* and *Paris Adult Theatre I v. Slaton:* The Obscenity Doctrine Reformulated," 6 Colum H R L Rev 219 (1974); *Comment,* "Community Standards, Class Actions, and Obscenity Under *Miller v. California,"* 88 Harv L Rev 1338 (1975); *Comment,* "New Prosecutorial Techniques and Continued Judicial Vagueness: An Argument for Abandoning Obscenity as a Legal Concept," 21 UCLA L Rev 181 (1973); *Comment,* "In Quest of a 'Decent Society': Obscenity and the Burger Court," 49 Wash L Rev 89 (1973).

The United States Supreme Court, by requiring that prurient appeal be determined by reference to "contemporary community standards," *intended* those standards to vary according to the location and the sophistication of the viewing audience. "It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City." *Miller v. California, supra,* 413 US at 32. (Footnote omitted.) The Oregon statute, by referring to contemporary *state* standards, provides a geographically uniform standard. Material that appeals to the

"average person's" prurient interest would not vary, at least theoretically, from Baker to Portland, Klamath Falls to Eugene. However, the reference to "contemporary" state standards anticipates fluctuations over time. For example, the type of sexually oriented materials published and considered acceptable in the 1970's may now, in what may be a different social atmosphere, be determined unacceptable and obscene.

The *Miller* formula was intended to restrict only "hard core" pornography. *Miller v. California, supra,* 413 US at 27. In determining that "obscenity," as limited to hard core pornography, may be constitutionally proscribed, the United States Supreme Court made two vital assumptions. The first is that hard core pornography is "self identifying." *See Comment;* "In Quest of a 'Decent Society': Obscenity and the Burger Court," *supra,* 49 Wash L Rev at 107. In other words, judges and jurors are entitled to conclude that they "know it when [they] see it." *See Jacobellis v. United States,* 378 US 184, 197, 84 S Ct 1676, 12 L Ed 2d 793 (1964) (Stewart, J., concurring). The second assumption is that some uncertainty on the part of potential defendants as to whether particular sexually explicit materials are legally obscene is constitutionally acceptable.

> "Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk." *Hamling v. United States, supra,* 418 US at 124; quoting, *United States v. Wurzbach,* 280 US 396, 399, 50 S Ct 167, 74 L Ed 2d 508 (1930).

The *Hamling* principle has its Oregon constitutional parallel. In discussing the constitutional principles prohibiting vague penal laws, the Oregon Supreme Court has noted:

> "A criminal statute need not define an offense with such precision that a person in every case can determine in advance that a specific conduct will be within the statute's reach." *State v. Graves, supra,* 299 Or at 195.

However, *Graves* did not arise within the strict limitations of Article I, section 8. Rather, the statute challenged as vague in *Graves* defined "burglar tool," the use of which enhances the

penalty for burglary. ORS 164.225(1)(a). To withstand constitutional scrutiny under Article I, section 8, the *Miller* definition of obscenity, as enacted in ORS 167.087(2), is required to do more than simply separate one degree of criminal conduct from another (as in *Graves*) or to separate conduct the legislature chooses to prohibit from conduct which it does not; it must separate prohibited expression from expression that *cannot be prohibited.*

Because ORS 167.087(2) must be used by judges, juries and potential defendants to assess the criminality of particular conduct, we hold that its definitions are not sufficiently precise to determine whether particular sexually explicit material is legally obscene. It is not acceptable, as a matter of state constitutional law, that the precise course of the line dividing obscene expression from protected expression be uncertain and that a person who chooses to disseminate sexually explicit materials must bear the risk of that uncertainty. The constitutional right to communicate freely on "any subject whatever" guaranteed by Article I, section 8, requires more than the statute provides by way of guidance. A person who trades in sexually explicit materials cannot discern that his wares are legally obscene under the statute; a trial judge is left with no legal standard to apply; and jurors are required to determine what is or is not obscene on the basis of their personal ideas of contemporary state standards. ORS 167.087(2) is unconstitutional. The demurrer should have been sustained.

In case no. 31300, conviction reversed; in case no. 31301, conviction reversed.

**JOSEPH, C. J.,** concurring.

I concur in Judge Young's majority opinion. However, if the Oregon Supreme Court had not precluded it, I would hold the statute unconstitutional under Article I, section 8, of the Oregon Constitution, which provides:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right.—"

Those words are so clear that there is nothing about them to be construed. However, the Oregon Supreme Court, in

*State v. Robertson,* 293 Or 402, 649 P2d 569 (1982); *In re Lasswell,* 296 Or 121, 673 P2d 855 (1983); and *State v. Moyle,* 299 Or 691, 705 P2d 740 (1985), has refused to read the words for what they plainly say. Instead, the court has made the existence of an "historical exception" the *first* point of inquiry in determining whether a statute which is directed at the content of speech or writing is valid. The most complete statement of that judicial addition to the constitution appears in *In re Lasswell, supra,* 296 Or at 124:

> "Recent decisions have explained that this guarantee forecloses the enactment of prohibitory laws, at least in the form of outright prohibitions backed by punitive sanctions, that in terms forbids speech or writing 'on any subject whatever,' *unless it can be shown that the prohibition falls within an original or modern version of a historically established exception* that was not meant to be ended by the liberating principles and purposes for which the constitutional guarantees of free expression were adopted. *See State v. Robertson/Young * * *.*" (Emphasis supplied.)

At the time that Article I, section 8, was adopted, there was a territorial statute that provided:

> "If any person shall import, print, publish, sell or distribute any book or any pamphlet, ballad, printed paper or other thing containing obscene language or obscene prints, pictures, figures, or other descriptions, manifestly tending to the corruption of the morals of youth, or shall introduce into any family, school or place of education, or shall buy, procure, receive, or have in his possession, any such book, pamphlet, ballad, printed paper or other thing, either for the purpose of loan, sale, exhibition or circulation, or with intent to introduce the same into any family, school, or place of education, he shall, on conviction, be punished by imprisonment in the county jail not more than six, nor less than three months, or by a fine not more than three hundred, nor less than fifty dollars." Statutes of the Territory of Oregon, Ch XI, § 10 (1854).

In the face of the language from *Lasswell,* and the quoted statute, this court is not free to read the Oregon Constitution as it is written. Instead, Article I, section 8, turns out to exist in an historical straitjacket that makes any "liberating principle" very difficult to perceive, let alone implement.

Buttler, J., and Gillette, J., pro tempore, join in this opinion.

**VAN HOOMISSEN, J.,** concurring in part; dissenting in part.

The majority concedes that ORS 167.087 passes muster under the United States Supreme Court's current view of the First Amendment.[1]

I respectfully dissent from that portion of the majority's opinion that concludes that ORS 167.087 is unconstitutionally vague under Article I, sections 20 and 21, of the Oregon Constitution.

Assuming that the vagueness issue has been raised,[2] the question, as I see it, is whether the standard established in *Miller v. California,* 413 US 15, 93 S Ct 2607, 37 L Ed 2d 419, *reh den,* 414 US 881 (1973), and its progeny, which is incorporated in ORS 167.087, satisfies the anti-vagueness requirement of the Oregon Constitution. *See State v. Moyle,* 299 Or 691, 707, 705 P2d 740 (1985); *State v. Graves,* 299 Or 189, 195, 700 P2d 244 (1985); *State v. Robertson, supra* n 2; *State v. Blair,* 287 Or 519, 601 P2d 766 (1979); *State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969). I conclude that it does.

I fail to comprehend how a statute that the majority

---

[1] In *State v. Liles,* 22 Or App 132, 140, 537 P2d 1182, *rev den* (1975), *cert den* 425 US 963 (1976), we held that ORS 167.087 passes muster under the First Amendment. *See also Film Follies, Inc. v. Haas,* 22 Or App 365, 539 P2d 669, *rev den* (1975), *appeal dismissed* 426 US 913 (1976).

[2] At trial, defendant only challenged ORS 167.087 as being unconstitutional under Oregon Constitution, Article I, section 8. He did not specifically challenge the statute on vagueness grounds. *See State v. Kennedy,* 295 Or 260, 265-68, 666 P2d 1316 (1983) (issues of state constitutional law should be analyzed, briefed and argued); *Sterling v. Cupp,* 290 Or 611, 613 n 1, 625 P2d 123 (1981) (specific bases of constitutional claims should be raised and analyzed). Defendant's brief in this court states: "The bases (*sic*) for the demurrers was that ORS 167.087 is unconstitutional under Oregon Constitution, Art. I, § 8." Neither defendant's brief nor his oral argument in this court indicate that he separately challenges the statute on the ground of vagueness. No doubt that explains why the state's brief and its oral argument do not even address the vagueness issue.

In the context of this case, I understand *State v. Robertson,* 293 Or 402, 414, 649 P2d 569 (1982), to hold that we must first address the Article I, section 8, issue before proceeding to consider a vagueness challenge. The majority opinion here turns *Robertson's* sequence of analysis on its head.

On the issue whether the legislature is flatly prohibited from legislating against "obscenity," *see* concurring opinion by Joseph, C. J., *supra,* 78 Or App at 405; *see also In re Lasswell,* 296 Or 121, 124, 673 P2d 855 (1983); *State v. Spencer,* 289 Or 225, 230-231, 611 P2d 1147 (1980); *State v. Tusek,* 52 Or App 997, 1000 n 2, 630 P2d 892 (1981).

and defendant concede is not vague under federal constitutional analysis can be vague when examined in the light of Article I, sections 20 and 21, of the Oregon Constitution.[3] As the Maine Supreme Court recently observed:

> "Indeed, it is difficult to see how an ordinance that so precisely follows the *Miller* definition of proscribable obscenity could be unconstitutionally vague." *City of Portland v. Jacobsky,* 496 A2d 646, 649 (Me 1985).

By not explaining in a principled manner its radical departure from federal authority, the majority utterly fails to show the "high respect for the opinions of the [United States] Supreme Court," that the Oregon Supreme Court has stated repeatedly should be shown. *See, e.g., State v. Kennedy, supra* n 2, 295 Or at 267; *City of Portland v. Thornton,* 174 Or 508, 512, 149 P2d 972, *cert den* 323 US 770 (1944). The objective is a *principled* interpretation of the independent provisions of our state constitution, not result-oriented jurisprudence. There is no basis in *a priori* logic or in the history or text of the Oregon Constitution to presume that the provisions of Article I invariably curtail governmental power more restrictively than parallel provisions of the United States Constitution. Unless a *principled* explanation for sharp divergence from federal authority is given, Article I is little more than a handy grab bag filled with a bevy of clauses that may be exploited in order to evade disfavored decisions of the United State Supreme Court. *See* Collins, *Reliance on State Constitutions—Away from a Reactionary Approach,* 9 Hastings Const L Q 1, 2 (1981).

In *Miller v. California, supra,* the United States Supreme Court held that any state statute that meets the standard in that case "will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." 413 US at 27. The *Miller* standard requires:

> "The basic guidelines for the trier of fact must be: (a)

---

[3]The *dissenting* opinions of Justice Brennan in *Paris Adult Theatres I,* 413 US 49, 93 S Ct 2628, 37 L Ed 2d 466, *reh den* 414 US 881 (1973), Justice Tobriner in *Bloom v. Municipal Court,* 16 Cal 3d 71, 127 Cal Rptr 317, 545 P2d 229 (1976), and Judge O'Connell in *State v. Jackson, supra,* are the *dicta* of the losers in earlier wars fought on different battlefields. They are simply irrelevant here.

whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 US at 24. (Citations omitted).

ORS 167.087(2) incorporates the *Miller* standard. It provides:

"As used in [ORS 167.087(1)], matter is obscene if:

"(a) It depicts or describes in a patently offensive manner sadomasochistic abuse or sexual conduct;

"(b) The average person applying contemporary state standards would find the work, taken as a whole, appeals to the prurient interest in sex; and

"(c) Taken as a whole, it lacks serious literary, artistic, political or scientific value."

ORS 167.060 defines sadomasochistic abuse and sexual conduct:

"(9) 'Sadomasochistic abuse' means flagellation or torture by or upon a person who is nude or clad in undergarments or in revealing or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

"(10) 'Sexual conduct' means human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification."

In *State v. Tidyman,* 30 Or App 537, 568 P2d 666, *rev den* 280 Or 683 (1977), the defendant challenged ORS 167.087 as vague under *both* the state and federal constitutions. We rejected the defendant's constitutional claims. In *State v. Childs,* 252 Or 91, 100, 447 P2d 304 (1968), *cert den* 394 US 931 (1969), the Supreme Court stated:

"Admittedly, the concept of obscenity does not lend itself to precise, mathematical definition. It is not, however, alone among imprecise terms having constitutional implications. It is hardly less precise than such terms as 'clear and present danger,' 'probable cause,' 'involuntariness' and 'due process,'

all of which are in acceptable constitutional use and equally incapable of exact definition. In *Roth* [*v. United States,* 354 US 476, 77 S Ct 1304, 1 L Ed 2d 1498, (1957)] the United States Supreme Court said:

> " 'Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirement of due process. * * *' [354 US at 491]."[4]

In *State v. Graves, supra,* 299 Or at 195, the Supreme Court explained:

> "A criminal statute need not define an offense with such precision that a person in every case can determine in advance that a specific conduct will be within the statute's reach. However, a reasonable degree of certainty is required by Article I, sections 20 and 21."

I would hold that a "reasonable degree of certainty" is provided by the definitions found in ORS 167.087(2). The statute is sufficiently explicit to adequately inform persons of ordinary intelligence of the prohibited conduct.[5] It does not delegate uncontrolled discretion to a judge or jury to punish or withhold punishment. It is not vague.

The majority does not explain why it does not attempt to give the statute a judicial interpretation that would give it the required definiteness. *See State v. Robertson, supra,* 293 Or at 411; *State v. Jackson,* 224 Or 337, 345, 364, 356 P2d 495 (1960). The majority of states judicially save vague statutes. *See* I Emerson, Haber, and Dorsen, *Political And Civil Rights In The United States,* 565-66 (4th ed 1976).

Judicial opinions from other jurisdictions are helpful in interpreting the Oregon Constitution to the extent that

[4]*State v. Childs, supra,* deals with *former* ORS 167.151, which is not in form or, totally, in substance the same as ORS 167.087, the relevant statute here. Further, *Childs* involved the so-called *Roth-Memoirs* test derived from *Roth v. United States, supra,* and *Memoirs v. Massachusetts,* 383 US 413, 86 S Ct 975, 16 L Ed 2d 1 (1966). The source for ORS 167.087 is *Miller v. California, supra,* and its progeny.

[5]A constitutional challenge on vagueness grounds requires a strict standard of analysis when protected speech is implicated. However, obscenity is not protected speech. *See* n 2, *supra;* concurring opinion of Joseph, C. J., *supra.* Therefore a strict standard of analysis is not required here. *See Young v. American Mini Theatres,* 427 US 50, 70, 96 S Ct 2440, 49 L Ed 2d 310 (1976); *State v. Graves, supra,* 299 Or at 195; *State v. Manzo,* 58 Hawaii 440, 573 P2d 945, 957-58 (1977).

their reasoning is persuasive and their background is applicable to Oregon. I have attempted to find any judicial opinions from other jurisdictions that have considered, under state constitutions, the vagueness issue in obscenity statutes incorporating the *Miller* standard. My research indicates that, although fewer than half the states have dealt with the vagueness issue after *Miller* under their state constitution, *no* state has reached the conclusion the majority reaches here.

The relevant portions of Article I, sections 20 and 21, of the Oregon Constitution, are taken *verbatim* from the 1851 Indiana Constitution. Carey, *A History of the Oregon Constitution* 463-469 (1926). Indiana in turn drew liberally on the constitutions of Kentucky, Ohio, Tennessee and Pennsylvania. *State v. Kessler,* 289 Or 359, 363, 614 P2d 94 (1980). The Indiana statutes which prohibit the distribution of obscene material (Ind Code § 35-49-2-1 together with the definition in Ind Code § 35-49-1-1 *et seq* and Ind Code § 35-49-3-1) adopt, almost verbatim, the *Miller* standard. I have found no Indiana case that specifically discusses Indiana's obscenity statutes under its state constitution. However, three recent cases have been decided on federal grounds.

In *Porter v. State,* ___ Ind App ___, 440 NE2d 690, 692-93 (1982), the court stated:

"Appellant first assails the Indiana obscenity statute as vague for its failure to adequately define the type of activity which will subject a seller to criminal liability. Appellant specifically alleges that certain terms in the definitional section of the statute are unclear as to the type of conduct intended to be included within the purview of the statute. Since the prohibited activity cannot be clearly delineated, the appellant argues that the statute must fail as being unconstitutionally vague. We cannot agree.

"* * * In *Miller v. California,* [*supra*], the Supreme Court of the United States laid out the standards by which works which depict or describe sexual conduct are to be judged. The Court noted that

" '[t]he basic guidelines for trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state

law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.'

"[Id 413 US at 24], (citations omitted). This is substantially the language adopted by our legislature to determine whether a matter or performance is obscene. Indiana Code Section 35-30-10.1-1(c) [(Supp 1981)] states that

" '(c)   A matter or performance is "obscene" if: (1) the average person, applying contemporary community standards, finds that the dominant theme of the matter of [*sic*] performance, taken as a whole, appeals to the prurient interest in sex; (2) the matter or performance depicts or describes, in a patently offensive way, sexual conduct; and (3) the matter of performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.'

"Subsections (a), (b), (d) and (e) define certain terms used within our legislature's definition of what is to be considered obscene. This is further supplemented by other sections of the Code which define such terms as deviate sexual conduct. *The definitions used by the legislature are unequivocally clear and would not confuse a person of ordinary intelligence as to what type of conduct is prohibited by the statute. The statute is not unconstitutionally vague* and the trial court did not thereby err in denying appellant's motion to dismiss." (Emphasis supplied, footnote and citations omitted.)

In *Ford v. State,* 182 Ind App 224, 394 NE2d 250, 253-54 (1979), the court stated:

"Next, defendant assails the constitutionality of the Indiana obscenity statute, IC 1971, 35-30-10.1-1, on First Amendment grounds. The first prong of this attack is premised on the erroneous assumption that all sexual expression is constitutionally protected. It is well established that obscenity is not within the area of constitutionally protected speech or press. *Roth v. United States, [supra]; Miller v. California, [supra]; Paris Adult Theatre I v. Slaton,* [413 US 49, 93 S Ct 2628, 37 L Ed 2d 446, *reh den* 414 US 881 (1973)]; *Kaplan v. California,* [413 US 115, 93 S Ct 2680, 37 L Ed 2d 492, *reh den* 414 US 883 (1973)].

"Secondly, defendant insists that the statute is vague and overly broad since it does not provide adequate notice of what acts are prohibited. The upshot of this assertion is that the language of the statute is not sufficiently precise because the words do not mean the same thing to all people in every instance.

*"A criminal statue is vague when it fails to inform persons of ordinary intelligence what their conduct must be in order for them to be guilty of a violation thereof. Platt v. State,* [168 Ind App 55, 341 NE2d 219 (1976)]. The criteria for determining what constitutes obscene material subject to state regulation was delineated in *Miller v. California, supra,* where it was held that appraisal of the nature of the matter by 'contemporary community standards' was an adequate basis for establishing obscenity.

" 'The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin,* [408 US 229, 92 S Ct 2245, 33 L Ed 2d 312 (1972)], quoting *Roth v. United States, [supra,* 354 US at 489]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the "utterly without redeeming social value" test of *Memoirs v. Massachusetts,* [383 US 413, 419, 86 S Ct 975, 16 L Ed 2d 1 (1966)]; that concept has never commanded the adherence of more than three Justices at one time. * * * If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary. *See Kois v. Wisconsin, supra,* [408 US at 232]; *Memoirs v. Massachusetts, supra,* [383 US at 459-60]; *(Harlan, J., dissenting); Jacobellis v. Ohio,* [378 US 184, 204, 84 S Ct 1676, 12 L Ed 2d 793 (1974)]; *New York Times Co. v. Sullivan,* [376 US 254, 284-85, 84 S Ct 710, 11 L Ed 2d 686 (1964)]; *Roth v. United States, supra,* [354 US at 497-98] (Harlan, J., concurring and dissenting.)' [413 US at 24-25]. (Footnote omitted)

"The Indiana statute is written in the form prescribed by *Miller.* Indeed, the language of the statute mirrors the holding in that case. Defendant has not demonstrated an infringement upon any First Amdendment guarantees.

"As a corollary to his void-for-vagueness assault, Ford claims that the statute violates the constitutional requirements of due process.

"In *Roth v. United State, supra,* the Supreme Court was

confronted with a similar arguement. There the statutes under attack punished the sale, advertising, or mailing of obscene material.

" 'Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. ". . . [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . .." *United States v. Petrillo,* [332 US 1, 7-8, 67 S Ct 1538, 91 L Ed 1877 (1947)]. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark ". . . boundaries sufficiently distinct for judges and juries fairly to administer the law . . .. That there may be marginal cases in which is is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense . . .." Id., [332 US at 7]. *See also United States v. Harriss,* [347 US 612, 624 n 15, 74 S Ct 808, 98 L Ed 989 (1954)]; *Boyce Motor Lines v. United States,* [342 US 337, 340, 72 S Ct 329, 96 L Ed 367 (1952)]; *United States v. Ragen,* [314 US 513, 523-24, 62 S Ct 374, 86 L Ed 383 (1942)]; *United States v. Wurzbach,* [280 US 396, 50 S Ct 167, 74 L Ed 508 (1930)]; *Hygrade Provision Co. v. Sherman,* [266 US 497, 45 S Ct 141, 69 L Ed 402 (1925)]; *Fox v. State of Washington,* [236 US 273, 35 S Ct 383, 59 L Ed 573 (1915)]; *Nash v. United States,* [229 US 373, 33 S Ct 780, 57 L Ed 1232 (1913)].

" 'In summary, then, *we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited.'* [354 US at 491-92]. (Emphasis supplied, footnotes omitted.)

"*See also: Hamling v. United States,* [*supra*]; *United States v. Reidel* [402 US 351, 91 S Ct 1410, 28 L Ed 813 (1971)].

"The legal definition of obscenity in the Indiana statute does not change with each indictment. *It is a term sufficiently specific to provide adequate notice of proscribed conduct.*" (Emphasis supplied.)

In *Riley v. State,* 180 Ind App 540, 389 NE2d 367, 368-69 (1979), the court stated:

"The first issue we consider is whether the statute is unconstitutionally vague. * * *

"* * * * *

"We note that the Indiana statute follows the guidelines set out by the United States Supreme Court in *Miller v. California,* [*supra*], almost word for word. The guidelines set the permissible scope of state regulation of obscene material weighed against First Amendment considerations. Using the guidelines, as found in IC 35-30-10.1-1(c), and specifically defined sexual conduct, such as found in IC 35-30-10.1-1(d), the Supreme Court stated, '[w]e are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activites may bring prosecution.' *Miller, supra,* [413 US at 27]. Yet Riley contends that the language found in the statute and *Miller* 'enhances' the vagueness problem and that the statute is not sufficiently certain to show what the legislature intended to prohibit.

*"The standard of specificity in Indiana is that a statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it to adequately inform them of the conduct to be proscribed. Sumpter v. State,* [261 Ind 471, 306 NE2d 95 (1974), *cert den* 425 US 952 (1976)]; *Hunter v. State,* [172 Ind App 397, 360 NE2d 588, *cert den* 434 US 906 (1977)].

"And it has been stated in *Roth v. United States,* [*supra*]:

" '*Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process.* "* * * [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * * [t]hat there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *." ' [Footnotes and citations omitted].*

*"We determine that the statutes are sufficiently clear as to give notice of the conduct proscribed.*" (Emphasis supplied.)

My research indicates that every jurisdiction that has specifically reviewed its post-*Miller* obscenity statute under its state constitution has concluded that, if its statute meets the *Miller* standard, it is not vague under the state constitution.

In *Bloom v. Municipal Court, supra* n 3, the California Supreme Court rejected the defendant's claim that an obscenity statute which incorporated the *Miller* standard was unconstitutionally vague under the California constitution. The court stated:

"Section 311 has been and is to be limited to patently offensive representations or descriptions of the specific 'hard core' sexual conduct given as examples in *Miller I,* * * * . [*Supra,* 413 US at 25]. As so construed, the statute is not unconstitutionally vague.

"Assuming *arguendo* that section 311 as authoritatively construed is as 'specific' as *Miller I* requires, plaintiff contends the statute is, nevertheless, so vague as to deny him due process of law. Plaintiff argues that judging a work's 'prurient interest' or 'social value' is so subjective a process that its outcome is inherently unpredictable, denying a potential violator fair notice of what is prohibited. Rejecting this argument, the United States Supreme Court has repeatedly upheld obscenity legislation against attacks mounted under the due process clause of the federal Constitution. (*Hamling v. United States,* [418 US 87, 89, 94 S Ct 2887, 41 L Ed 2d 590 (1974)]; *Miller v. California,* [*supra*]; *Roth v. United States,* [*supra*]). *The due process clause of the California Constitution does not impose a stricter standard in this regard."* 545 P2d at 235. (Emphasis supplied.)

In *People v. New Horizons, Inc.,* 200 Colo 377, 616 P2d 106 (1980), and *People v. Tabron,* 190 Colo 149, 544 P2d 372 (1976), the Colorado Supreme Court stuck down that state's obscenity statutes, on federal constitutional grounds, for failure to meet the *Miller* standard. However, in *People ex rel Tooley v. Seven Thirty-Five East Colfax, Inc.,* ___ Colo ___, 697 P2d 348 (1985), the Colorado Supreme Court upheld, under both the state and federal constitutions, on vagueness grounds, that state's obscenity statutes which incorporated the *Miller* standard.

In *State v. Manzo, supra* n 5, the Hawaii Supreme Court rejected the defendant's claim that an obscenity statute

which incorporated the *Miller* standard was unconstitutionally vague under the Hawaii Constitution. The court stated:

"Eloquent arguments have been advanced for the view that the independent judgment we are obligated to exercise in applying the due process requirements of the Hawaii Constitution requires us to discard as poorly reasoned the decisions of the United States Supreme Court on this question, and to hold that constitutionally acceptable notice is not given to affected individuals by the sort of definition contained in § 712-1210(5). A particularly forceful presentation of these arguments is contained in Justice Tobriner's dissent in *Bloom v. Municipal Court, [supra]*. As is said there, 'a civilized society does not imprison a person for violating prohibitions on conduct that cannot even be defined.' [545 P2d at 239]. The joinder of four Justices in Justice Stevens' dissent in *Ward v. Illinois*, [431 US 767, 97 S Ct 2085, 52 L Ed 2d 738 (1977)], evidences the depth of disagreement on the Supreme Court. The somewhat mechanical reasoning in support of the conclusion suggested in the preceding paragraph is, without more, an insufficient response to this challenge. We are led to accept that conclusion, and to concur in the concededly unsatisfactory treatment of this problem by the Supreme Court and by the great majority of the state courts, by additional considerations which seem to us to be controlling.

"The problems of fair notice and the other aspects of the vagueness doctrine are inescapably linked to the status of obscenity as an exception from protected speech. Justice Tobriner contends that 'no definition of obscenity calculated to curtail the flow of material to consenting adults can be framed within the permissible scope of the vagueness doctrine.' [545 P2d at 242]. But this is to say that the exclusion of obscenity from protected speech is a fallacy, because what is unprotected is undefinable. Whether such an exclusion should exist has been strenuously debated. The difficulty of defining what is unprotected is a weighty consideration in that debate. Once the debate has been resolved in favor of the exclusion, however, recognition has been given to a substantial interest of society in regulating the flow of obscene material, an interest of such importance that fundamental interests in freedom of speech have been subordinated to it.

"Vagueness is concededly a relative concept. When the First Amendment is not implicated, a notably less stringent degree of specificity is commonly accepted, as is exemplified

in the noise ordinance upheld in *Grayned v. City of Rockford,* [408 US 104, 92 S Ct 2294, 33 L Ed 2d 222 (1972)]. The greater specificity demanded when First Amendment values are present cannot give those values such overriding importance as to destroy competing values which society is entitled to implement. The exclusion of obscenity from the protection given to speech establishes the social value implemented by regulations of obscenity on a level which secures it against erosion by a vagueness doctrine designed to protect the competing interest in freedom of speech. Thus in *Roth v. United States,* [*supra*] when the Court looked for a precedent which defined the standard of specificity to be applied to an obscenity regulation, it found it in *United States v. Petrillo, [supra],* in that case, no regulation of speech was involved and a statute forbidding the use of coercion to compel the employment of more persons than were 'needed * * * to perform actual services' was held 'to give sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' [*United States v. Petrillo, supra,* 332 US at 8]. The *Roth* court applied that standard, rather than the stricter standard of First Amendment cases, to the obscenity regulation before it. Similarly, in *Young v. American Mini Theatres,* [427 US 50, 96 S Ct 2440, 49 L Ed 2d 310 (1976)], where the challenged ordinance regulated the exhibition of sexually explicit movies, the plurality opinion rejects a vagueness challenge on the authority of *Parker v. Levy,* [417 US 733, 94 S Ct 2547, 41 L Ed 2d 439 (1974)], in which the Court upheld a section of the Code of Military Justice as sufficiently specific and rejected as inapplicable the standards of First Amendment cases.

"In sum, *these considerations persuade us that, in appraising a vagueness challenge to a regulation of pornography in light of the due process requirements of the Hawaii Constitution, we should follow the same precedents as have been chosen by the United States Supreme Court in its determination of challenges under the Fourteenth Amendment.* The criteria by which we should judge the adequacy of the notice given by the statute are those applicable when First Amendment concerns are not present, rather than the stricter criteria which have been evolved for statutes which regulate speech. Whether or not there may be difficulty in determining whether marginal conduct is within the proscription of the statute under which Appellant has been charged, *the statute gave fair warning that Appellant would be subject to prosecution for distribution of the 'hard core' pornography to which it is limited by our construction in this case. Cf. State v. Taylor,*

[49 Hawaii 624, 425 P2d 1014 (1967)]. We conclude that *Appellant was given fair notice in satisfaction of the due process requirements of both the United States and the Hawaii Constitutions."* 573 P2d at 957-58. (Emphasis supplied, footnotes omitted.)

In *State v. Wrestle, Inc.,* 360 So 2d 831 (La 1978), *modified on other grounds sub nom Burch v. State,* 441 US 130, 99 S Ct 1623, 60 L Ed 2d 96 (1979), the Louisiana Supreme Court rejected the defendant's claim that an obscenity statute which incorporated the *Miller* standard was unconstitutionally vague under the Louisiana constitution. The court stated:

"The Louisiana obscenity statute, in the portions quoted in this opinion * * *, clearly complies with the federal constitutional requirements of regulating only specifically defined sexual conduct, limited to works which, taken as whole, appeal to the prurient interest in sex, which portray this conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value. *Miller v. California, [supra,* 413 US at 25]. (Likewise, our statutory guidelines for the trier of fact comply with the federal constitutional standard for factual determination of obscenity, including by the use of contemporary community standards. Id.)

"As *Miller* notes, compliance of a state statute with these constitutional prerequisites 'will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution.' [413 US at 28]. *We are satisfied that such notice not only satisfies federal due process and First Amendment requirements but also similar notice requirements of our state constitution.*

"We therefore reject the defendant's contention that the statute does not adequately inform the accused of the conduct proscribed by it.

"The defendant further contends that the community standard for determination of obscenity leaves protection of constitutional freedom of expression to the whim of each jury. In this regard, *Miller* states: 'If a state law that regulates obscene material is thus limited * * * [as is Louisiana's], the First Amendment values * * * are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary.' [413 US at 25].

"We have recognized our duty to conduct an independent constitutional review in the appellate court of constitutional claims. *State v. Amato,* [343 So 2d 698, 703-04 (La 1977)]. As we stated in *State v. Luck,* [353 So 2d 225, 230 (La 1977)]: '* * * the trial court's determination that material is or is not obscene presents an issue of law fully reviewable by this court. Even the factual determination of obscenity by a trial jury must be subject to full appellate review to meet constitutional standards designed to effectuate freedom of expression. *Jenkins v. Georgia,* [418 US 153, 94 S Ct 2750, 41 L Ed 2d 642 (1974)].'

"The trial court properly overruled the defendants' motion to quash the indictment. We find no merit to this assignment of error." 360 So 2d at 835. (Emphasis supplied, footnote omitted.)

In *Com. v. United Books, Inc.,* 389 Mass 888, 453 NE2d 406 (1983), the Supreme Judicial Court of Massachusetts rejected the defendant's claim that an obscenity statute which incorporated the *Miller* standard was unconstitutionally vague under the Massachusetts constitution. The court stated:

"The defendant first argues that the definition of 'obscene matter' in § 31 is unconstitutionally vague because there are no contemporary standards of the Commonwealth. In particular, the defendant focuses on the 'patently offensive' requirement. Since § 31 was based on *Miller v. California,* [*supra,* 413 US at 24-25, 33-34], we see no merit in the defendant's claim under the First Amendment. *See Commonwealth v. Trainor,* [374 Mass 796, 798, 374 NE2d 1216 (1978)]. In *Commonwealth v. 707 Main Corp.,* [371 Mass 374, 383, 357 NE2d 753 (1976)], we held that the statute 'is not unconstitutionally vague in its proscription of dissemination of obscene matter, because its definitions of *"obscene" matter* and "sexual conduct" * * * provide reasonably ascertainable standards of guilt' (emphasis supplied). *See District Attorney for the N. Dist. v. Three Way Theatres Corp.,* [371 Mass 391, 394, 357 NE2d 747 (1976)]; *Commonwealth v. Thureson,* [371 Mass 387, 389, 357 NE2d 750 (1976)]. We again rejected a claim that the Massachusetts Constitution requires 'greater specificity' in the statutory definition of obscenity in *Commonwealth v. Trainor,* [*supra,* 374 Mass at 798-99]. *See Bunker Hill Distrib., Inc. v. District Attorney for the Suffolk Dist.,* [376 Mass 142, 145-46, 379 NE2d 1095 (1978)].

" * * * * *

"We believe that *our prior decisions establish that the definition of obscenity in G.L. c. 272, § 31, is not unconstitutionally vague under the Declaration of Rights* or the First Amendment, and we once again 'see no reason to change that conclusion at this time.' *Commonwealth v. Trainor, [supra,* 374 Mass at 799]. 453 NE2d at 409-10. (Emphasis supplied, footnote omitted.)

In *City of Portland v. Jacobsky,* 496 A2d 646 (Me 1985), the Maine Supreme Court rejected the defendant's claim that a local obscenity ordinance which incorporated the *Miller* standard was unconstitutionally vague under the Maine constitution. The court stated:

"In language unchanged since Maine achieved statehood the Declaration of Rights of our Constitution proclaims in pertinent part:

" 'Every citizen may freely speak, write and publish his sentiments on any subject, being responsible for the abuse of this liberty.'

"Me. Const. art. I, § 4. The impact of this provision on the publication of obscene materials has heretofore never been analyzed by this Court. On the other hand, the United States Supreme Court and other federal courts have had many occasions to determine the application of the First Amendment to such publications. We note the care with which the drafters of the Portland ordinance have followed the conjunctive three-element test that the United States Supreme Court set forth in *Miller v. California, [supra* 413 US at 24], to delineate the scope of obscene expression *not* protected by the constitutional safeguards of the First Amendment. By tracking the *Miller* definition of obscenity, the Portland ordinance passes muster under the federal constitution. Any difference in language between the Maine Constitution and the United States Constitution is, in the context of this case, insufficient to justify striking out on our own to develop a unique answer to the difficult definitional problem that has been long and often litigated under the First Amendment. *We refuse to extend state constitutional protection to obscene expression that under the Miller test does not enjoy federal constitutional protection. Accordingly, we conclude that the Portland ordinance does not infringe upon the Defendants' freedom of expression guaranteed by Article I, Section 4, of our Maine Constitution.*

"* * * * *

"Nor do we agree with the suggestion of the Superior

Court that the Portland obscenity ordinance may be void for vagueness. An ordinance or a statute may be void for vagueness when its language either forbids or requires the doing of an act in terms so vague that people of common intelligence must guess at its meaning. As we reiterated in *Maine Real Estate Commission v. Kelby,* [360 A2d 528, 529, (Me 1976)], due process requires that the law provide reasonable and intelligible standards to guide the future conduct of our people. We conclude that the infirmity is not found in the Portland obscenity ordinance. *Indeed, it is difficult to see how an ordinance that so precisely follows the Miller definition of proscribable obscenity could be unconstitutionally vague.*

"In the context of this case we do not interpret the Maine Constitution to produce a result different from that which would be reached under the federal constitution." 496 A2d at 648-49. (Emphasis supplied, footnotes omitted.)

In *State v. Hollins,* 533 SW2d 231 (Mo 1975), the Missouri Supreme Court rejected the defendant's claim that an obscenity statute which incorporated the *Miller* standard, was unconstitutionally vague under the Missouri constitution. The court stated:

"Defendant also contends that § 563.280 [Mo Rev Stat (1969)] is unconstitutionally vague and overbroad and that 'ACTION Vol 1 No 5' is not obscene and is protected expression under the First Amendment of the U.S. Constitution and *Article One, Section Eight, of the Missouri Constitution.*

"* * * * *

"Defendant contends Missouri's obscenity statute is vague and overbroad. The Missouri Supreme Court has held to the contrary. *State ex rel Wampler v. Bird,* [499 SW2d 780 (Mo 1973)] held the statute was in line with the U.S. Supreme Court obscenity guidelines of *Roth v. United States,* [*supra*] and *Miller v. California,* [*supra*]. *See also State v. Vollmar,* [389 SW2d 20 (Mo 1965)]. The judicial construction of statutory language becomes part of the statute, making the statute sufficiently specific to avoid challenge for vagueness. *State v. Crawford,* [478 SW2d 314 (Mo 1972)]. In the light of its prior judicial constructions, *Missouri's obscenity statute is not vague or overbroad.*" 533 SW2d at 232-33. (Emphasis supplied.)

In *State v. Lesieure,* 121 RI 859, 404 A2d 457 (1979), the Rhode Island Supreme Court rejected the defendant's claim that the an obscenity statute which incorporated the

*Miller* standard was unconstitutionally vague under the Rhode Island constitution. The court stated:

"We construe the provisions of article I, section 10 of the Declaration of Rights of the Rhode Island Constitution as adding no further guarantees to the right of a defendant to be informed of the nature and cause of a criminal accusation than are provided by the parallel due process terms of the Federal Constitution which were found to be met in *Hamling v. United States, [supra]*.

"For the reasons stated, we answer the first certified question in the negative by holding that § 11-31-1 was not invalid or void for impermissible vagueness and overbreadth." 404 A2d at 462.

In *Taylor v. State ex rel Kirkpatrick*, 529 SW2d 692 (Tenn 1975), *cert den* 429 US 930 (1976), the Tennessee Supreme Court rejected the defendant's claim that an obscenity statute which incorporated the *Miller* standard was unconstitutionally vague under the Tennessee constitution. The court stated:

"Next, the defendants assert that the definitions contained in Section 2(H) of the Act are so vague and indefinite that they violate *Article I, § 19 of the Constitution of Tennessee* and the First and Fourteenth Amendments of the United States Constitution.

"\* \* \* \* \*

"*In our view, the contention that the foregoing definitions are unconstitutionally vague cannot be seriously maintained.*

" \* \* \* \* \*

"The words used give adequate warning of the conduct proscribed and set out boundaries sufficiently distinct for courts to fairly administer the law; no more is required. This statute represents a good faith effort by our General Assembly to comply with the standards recently announced by the Supreme Court of the United States in *Miller v. California,* [*supra*], and most of the language attacked as vague is taken *verbatim* from that opinion. We hold that the definitions here attacked comply with the applicable standards of substantive due process." 529 SW2d at 696-97. (Emphasis supplied.)[6]

---

[6]In *Leech v. American Booksellers Ass'n, Inc.,* 582 SW2d 738 (Tenn 1979), the Tennessee Supreme Court held the newly enacted 1978 Tennessee obscenity statute unconstitutional, finding which violated both the state constitution and the federal *Miller* standard. The state's *former* obscenity statute, that had been upheld in *Taylor v. State ex rel Kirkpatrick, supra,* was then reenacted by the state legislature. The constitutionality of that statute again was upheld in *State v. Runions,* 654 SW2d 407 (Tenn Cr App), *app den* (1983).

In *Com. v. Stock,* 346 Pa Super 60, 499 A2d 308 (1985), the Superior Court of Pennsylvania rejected the defendant's claim that an obscenity statute which incorporated the *Miller* standard was unconstitutionally vague under the Pennsylvania constitution. The court stated:

"Stock next argues that the obscenity statute unlawfully delegates legislative power to the several district attorneys of the Commonwealth by conferring on them the discretion whether to proceed against alleged violators by criminal prosecution or equitable injunction. *See* [18 Pa Cons Stat § 5903(g), (h)]. Stock contends that this prosecutorial option offends *Article 2, § 1 of the Pennsylvania Constitution* as well as the Fourteenth Amendment by confiding a standardless legislative discretion in district attorneys. We disagree. The statute defining the offense creates a clear, explicit standard in accordance with the definition of obscenity announced by the United States Supreme Court in *Miller.* The statute gives the district attorney no say in deciding what is or is not obscene; the only discretion provided is in the means of enforcement chosen to combat the evils identified in the legislation. This alleged 'delegation' of discretion is in reality not a delegation at all, but merely a particular manifestation of the inherent discretionary powers of district attorneys in our system of justice. A district attorney by the nature of his office is invested with broad discretion over how, whether, and when to prosecute criminal offenses. *See Commonwealth v. Malloy,* [304 Pa Super 297, 450 A2d 689 (1982)] (Opinion by Cirillo, J.). This discretion is not lessened when the prosecutor is charged with deciding which of two legislatively authorized techniques of enforcement will more effectively accomplish the legislative program of stamping out commercial obscenity. Appellant's constitutional attack on the statute on delegation grounds must fail.

"* * * * *

"Stock's final constitutional claim is actually a dual attack on subsection (f) of Section 5903. This provision makes it illegal for any person to require as a condition of business dealings that any distributor or retailer purchase or take for resale any written or printed matter or article or instrument 'of an obscene nature.'

"The first prong of Stock's attack on 5903(f) is based on the asserted vagueness of the phrase 'obscene nature.' Stock points out that the Legislature has explicitly defined 'obscene materials,' the term used in subsection (a)(2) of the statute, yet has not defined materials of an 'obscene nature' as that

term appears in subsection (f). Because of the disparity in wording, Stock apprehends that the Legislature sought to include a wider class of materials in (f) than in (a)(2), but since there are no standards for determining what falls within the supposed wider class, he argues that subsection (f) is fatally vague so as to exert an unconstitutional chilling effect on First Amendment rights.

"We reject Stock's reading of the statute, and determine that both subsections refer to the same class of materials. Although the difference in wording perhaps reflects imprecise drafting, we can readily ascertain the reason therefor. The obscenity statute as first passed by the Legislature in 1972 contained a blanket definition of 'obscene' which applied to all subsections of Section 5903. *See* [Act of Dec. 6, 1972, PL 1482, No 334, § 1]. However, our Supreme Court in *Commonwealth v. McDonald,* [464 Pa 435, 347 A2d 290, *cert denied,* 429 US 816, (1975)], determined that the definition of obscenity in the 1972 act did not meet the standards of *Miller, supra,* and hence struck down the statute. Thereafter the Legislature rewrote the statute and substituted the present definition of 'obscene materials' incorporating the language of *Miller.* [Act of Nov 5, 1977, PL 221, No 68, § 1; *see* 18 Pa Cons Stat § 5903(b)] ('Definitions'). However, through apparent oversight the Legislature failed to amend the wording of subsection (f) of the statute to take into account that the Act now defined the noun 'obscene materials' rather than the adjective 'obscene.' Nevertheless, we need not blind ourselves to the fact that the Legislature in amending the statute was clearly trying to come within the letter of the law as laid down in *Miller.* Thus, any interpretation of what the Legislature means by materials 'of an obscene nature' must refer to the *Miller* standards quoted substantially verbatim in the statutory definition of 'obscene materials.' This result is compelled not only by the rules of statutory construction, but by ordinary precepts of common sense. We therefore decline to throw out the obscenity statute on the flimsy semantic grounds offered here." 499 A2d at 314-15. (Emphasis supplied.)

*See also Com. v. Croll,* 331 Pa Super 107, 480 A2d 266 (1984); *Com. v. Doe,* 316 Pa Super 1, 462 A2d 762 (1983); *Long v. 130 Market St. Gift & Novelty, Etc.,* 294 Pa Super 383, 440 A2d 517 (1982).

In sum, my research shows that every jurisdiction which has examined, under its state constitution, an obscenity

statute or ordinance incorporating the *Miller* standard has upheld that statute or ordinance against a state constitutional vagueness challenge. That defendant has cited no case to the contrary is not surprising in the light of his reliance on Article I, section 8, and not on any vagueness challenge under Article I, sections 20 and 21.[7]

In addition to the above jurisdictions, several other jurisdictions have examined state obscenity statutes challenged for vagueness on federal constitutional grounds only. A few have held that their statutes were unconstitutional because they did not meet the *Miller* standard. However, my research shows that no state appellate court has ever hinted, not even in a footnote, that an obscenity statute which satisfies *Miller* would be vague under that state's own constitution.[8]

The majority simply fails to make a principled case for its conclusion that ORS 167.087 is unconstitutionally vague under the Oregon Constitution. There is nothing in the majority's opinion that explains or justifies our departure from federal authority; nothing explains or justifies our rejection of the analysis of the appellate courts of other jurisdictions that have considered post-*Miller* statutes and the

---

[7] I am not surprised that, in a recent Oregon State Bar publication on state constitutional law, the author of the section on Freedom of Expression did not even suggest a vagueness challenge to the statute. The author's only point was that obscenity was not one of the "historical exceptions" provided for at the time of the adoption of the Oregon Constitution, and, therefore, any anti-obscenity statute addressed to adults is flatly prohibited by Article I, section 8. Oregon State Bar, *Oregon Constitutional Law* (1985). That is the only claim defendant is making here.

[8] *See Wild Cinemas of Little Rock, Inc. v. Bentley,* 499 F Supp 655 (E D Ark 1980); *Rhodes v. State,* 283 So 2d 351 (Fla 1973); *Dyke v. The State,* 232 Ga 817, 209 So 2d 166 (1974); *Slaton v. Paris Adult Theatre,* 231 Ga 312, 201 So 2d 456 (1973); *People v. Ward,* 63 Ill 2d 437, 349 NE2d 47 (1976), *aff'd* 431 US 767, 97 S Ct 2085, 52 L Ed 2d 738 (1977); *400 E. Baltimore St. v. State,* 49 Md App 147, 431 A2d 682 (1981), *cert den* 455 US 940 (1982); *People v. Neumayer,* 405 Mich 341, 275 NW2d 230 (1979); *State v. Welke,* 298 Minn 402, 216 NW2d 641 (1974); *State ex rel Wampler v. Bird,* 499 SW2d 780 (Mo 1973); *State v. Manchester News Co., Inc.,* 118 NH 255, 387 A2d 324, *app dismissed* 439 US 949 (1978); *State v. Harding,* 114 NH 325, 320 A2d 646 (1974); *State v. DeSantis,* 65 NJ 462, 323 A2d 489 (1974); *People v. Gilmore,* 120 Misc 2d 741, 468 NYS2d 965 (1983); *People v. Illardo,* 48 NY2d 408 (1979); *People v. Martin,* 100 Misc 2d 744, 420 NYS2d 318 (1979); *People v. Heller,* 33 NY2d 314, 352 NYS2d 601, 307 NE2d 805 (1973); *State v. Bryant,* 16 NC App 456, 192 SE2d 693 (1973), *aff'd* 285 NC 27, 203 SE2d 27, *cert den* 419 US 974 (1974); *State ex rel Keating v. "Vixen",* 35 Ohio St 2d 215, 301 NE2d 880 (1973); *Price v. Commonwealth,* 214 Va 490, 201 SE2d 798 (1974); *State v. J-R Distributors, Inc.,* 82 Wash 2d 584, 512 P2d 1049 (1973).

vagueness issue under state constitutions and have reached the opposite conclusion. The majority points to nothing in the text, history or purpose of the Oregon Constitution that supports its conclusion. It cites no scholarly research to support its analysis or conclusion. It gives no practical or policy considerations demonstrating that its conclusion is not just a convenient vehicle to evade the decisions of the United States Supreme Court. Quite simply, that is not *principled* decision-making.[9]

The majority should bite the bullet and address the only issue preserved in the trial court and briefed and argued on appeal, *i.e.,* whether the legislature is flatly proscribed from enacting the statute under Article I, section 8.[10]

I concur with the majority that Deschutes County case #31301 must be reversed.

Warden, J., and Rossman, J., join in this opinion.

---

[9]*See State v. Lowry,* 295 Or 337, 351-52, 667 P2d 996 (1983) (Jones J., specially concurring); *see also* Maltz, *The Dark Side of State Court Activism,* 63 Tex L Rev 995 (1985); Linde, *E Pluribus—Constitutional Theory and State Courts,* 18 Ga L Rev 165 (1984); Collins, *Reliance on State Constitutions—Away From a Reactionary Approach,* 9 Hastings Const L Q 1, 2 (1981); Howard, *State Courts and Constitutional Rights in the Day of the Burger Court,* 61 Va L Rev 873, 940-43 (1976); Deukmejian & Thompson, *All Sail and No Anchor-Judicial Review Under the California Constitution,* 6 Hastings Const L Q 975 (1979); Note, *Toward a Principled Interpretation of the State Constitution,* 29 Stanford L Rev 297 (1977).

[10]The Legislature can now spend the next several months writing a new statute. In time, that new statute will be enforced; after that, this court again will be asked to decide whether the Legislature may legislate in the area of adult obscenity. Defendant has raised that issue in this case; we should decide it now.